STATE EMPLOYEES ASSOCIATION OF NORTH CAROLINA, INC. v. NORTH CAROLINA DEPARTMENT OF STATE TREASURER AND RICHARD H. MOORE, IN HIS CAPACITY AS TREASURER OF THE STATE OF NORTH CAROLINA

No. 487A09

(Filed 17 June 2010)

**Public Records— denial of requested records—Rule 12(b)(6) dismissal**

The trial court erred by dismissing a public records case under Rule 12(b)(6) where plaintiff's claim was supported by the Public Records Act, states facts sufficient to allege denied access to requested public records, and discloses no facts that necessarily defeat the claim.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 200 N.C. App. ——, 685 S.E.2d 516 (2009), affirming an order dismissing plaintiff's complaint entered on 21 July 2008 by Judge James E. Hardin, Jr. in Superior Court, Wake County. Heard in the Supreme Court 23 March 2010.

*Blanchard, Miller, Lewis & Styers, P.A., by E. Hardy Lewis, for plaintiff-appellant.*

*Shanahan Law Group, PLLC, by Kieran J. Shanahan and Steven K. McCallister; and Joyce Rutledge, Legal Counsel, Retirement Systems Division, Department of State Treasurer, for defendant-appellees.*

*Bussian Law Firm, PLLC, by John A. Bussian, for North Carolina Press Association, and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mark J. Prak, for North Carolina Association of Broadcasters, amici curiae.*

BRADY, Justice.

One of the earliest historians to comment on the "great experiment" that is America noted that our nation's political structure rests on the fundamental "principle of the sovereignty of the people." 1 Alexis de Tocqueville, *Democracy in America* 9, 40 (Henry Reeve trans., Arlington House 1966) (1835). In harmony with this principle, the North Carolina General Assembly recognized in the Public Records Act that "[t]he public records and public information compiled by the agencies of North Carolina government or its subdivisions are *the property of the people.*" N.C.G.S. § 132-1(b) (2009) (emphasis added). The issue in this case is whether the complaint filed by plaintiff State Employees Association of North Carolina, Inc. under the North Carolina Public Records Act, *id.* §§ 132-1 to -10 (2009), is sufficient to overcome a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to North Carolina Rule of Civil Procedure 12(b)(6). We conclude that the complaint is sufficient and reverse the Court of Appeals.

## FACTUAL BACKGROUND

Plaintiff's complaint and accompanying exhibits tend to show the following: Plaintiff is a nonprofit corporation incorporated under the laws of our state for the purpose of, *inter alia,* promoting the best interests of current, retired, and future employees of the State of North Carolina. Defendants are the North Carolina Department of State Treasurer (defendant department), and, in his official capacity, Richard H. Moore (defendant Moore), who is the former Treasurer of the State of North Carolina and as such was the custodian of the public records of defendant department when the complaint was filed (collectively defendants).

Plaintiff's complaint was the culmination of its efforts over the course of nearly a year to obtain copies of documents involving the investment decisions and performance of the Retirement Systems Division of the Department of State Treasurer. Plaintiff's corporate officers decided to investigate issues illuminated by an article published in February 2007 in *Forbes* magazine entitled, "Pensions, Pols, Payola." Neil Weinberg, *Pensions, Pols, Payola,* Forbes, Mar. 12, 2007, at 42, *available at* http://www.forbes.com/forbes/2007/0312/042.html. The article takes a critical approach to what it calls "a cesspool of pay-to-play" scenarios in "most of the U.S. State and local governments." *Id.* at 43. Particularly, the article reports on some of defendant Moore's activities and decisions:

As state treasurer Moore, a Democrat, is the sole fiduciary for the North Carolina Retirement System, with $73 billion in assets. He holds sway over which money managers are entrusted to invest funds from the state pension plan. At stake: millions of dollars in fees. He has parlayed this clout into one of the biggest fundraising machines in the state by eagerly accepting contributions from dozens of financial firms that benefit (or could benefit) from his largesse.

*Id.* at 43.

As a result of the article, plaintiff's executive director wrote a letter to defendant Moore dated 1 March 2007 requesting copies of the following public records:

1. All documents from the Office of State Treasurer and the law firm retained regarding the dispute with *Forbes* over the magazine's request for information and the documents provided to Forbes.

2. A complete accounting of how the law firm was paid and the total cost to taxpayers.

3. All investment reports that your office has been required during your tenure to file with the legislature under GS 147-69.3(h)-(i), any other investment reports that have been required to be publicly filed under state law and identification of such reports that have not been filed.

4. A list of all current investment managers, their performance by year (or total time if shorter than a year) and the total fee amounts being paid by your office.

In response, defendant Moore provided plaintiff with copies of approximately seven hundred pages of public documents in March 2007. Plaintiff examined these documents over a number of months and concluded that they did not fully satisfy the request. As such, plaintiff's executive director sent a second letter to defendant Moore dated 16 October 2007. Plaintiff renewed its request as stated in the March 2007 letter and sought additional documents, as follows:

1. All private equity, hedge fund or real estate investments made or maintained by the Treasurer's Office on behalf of the state's pension funds since January 1, 2001. Please provide records that show the following information for each year that the investment was maintained by the Treasurer's Office:

STATE EMPLOYEES ASS'N OF N.C., INC. v. N.C. DEP'T OF STATE TREASURER

[364 N.C. 205 (2010)]

   a.  Name of the fund or partnership

   b.  Name of the principals, fund managers and general partners

   c.  Date of the initial commitment, initial investment and any follow-[up] communications

   d.  Amount of capital committed and the actual amount of funds paid

   e.  Cash paid out

   f.  Remaining or estimated value

   g.  Internal rate of return

   h.  Investment multiple or return on capital

2.  Records that show the fees paid to each external investment manager for the state's pension funds, including brokers, private equity managers, hedge fund managers and real estate investment managers since January 6, 2001. Please provide records that show the fees paid on an annual or monthly basis.

3.  Records that show the fees paid to each broker, bank or other financial institution that manages or holds the investments, cash and/or deposits in the Cash Management Program from January 6, 2001, to the present. Please provide records that show the fees paid on an annual or monthly basis.

4.  Records that show all stocks held each year by the state retirement system (including externally managed funds) administered by the State Treasurer from January 6, 2001, to the present.

5.  Records that show the identity of each person who has served on the State Treasurer's investment committee since January 6, 2001. Please provide records that show the dates of service for each advisor, including any SEC investment advisor, registration forms or form ADV's provided to or retrieved by the State Treasurer's Office.

Having received no response to its October 2007 letter, plaintiff sent a third letter to defendant Moore on 6 December 2007, asking that the requested documents be made available by 31 December 2007; otherwise, plaintiff would "consider taking appropriate legal action." On 21 December 2007, the director of communications for

STATE EMPLOYEES ASS'N OF N.C., INC. v. N.C. DEP'T OF STATE TREASURER

[364 N.C. 205 (2010)]

defendant department sent a letter to plaintiff stating that the "more than" seven hundred pages of documents "previously provided" was "believe[d]" to "fully answer[]" plaintiff's "original request," and if not, plaintiff was asked to provide "a list of the specific information that was not included with the original documents." On 7 January 2008, a second letter from defendant department's communications director reiterated that plaintiff should "indicate specifically" what was believed to be "missing."

Plaintiff then sent a fourth letter to defendant Moore dated 15 January 2008 and included a list of documents believed to be "omitted from those initially disclosed." Plaintiff referred to the requests made in its previous letters of 1 March and 16 October 2007 and described the items believed to still be missing. The letter indicated that plaintiff would file a lawsuit if defendants did not "produce the requested public records by 5:00 p.m. on Friday, January 18, 2008."

The director of communications for defendant department then sent two letters to plaintiff, both dated 18 January 2008. One letter addressed the items plaintiff believed to be missing from its initial request of 1 March 2007. One hundred sixty-two pages of copied documents were included with the letter which, according to defendants, "complete[d]" plaintiff's 1 March 2007 request. The second letter from defendant department dated 18 January 2008 addressed plaintiff's 16 October 2007 request. This letter stated that defendant department was working to provide the information, explained that plaintiff had received some of the requested documents already, and included copies of twenty-eight additional pages of copied material.

Plaintiff's executive director responded in a letter dated 24 January 2008 that he believed certain information was still missing, and he provided examples of specific documents that he believed existed but had not yet been disclosed. He asked for copies of the documents not yet provided and requested information explaining why defendants were taking so much time to fulfill the requests.

## PROCEDURAL BACKGROUND

On 1 February 2008, plaintiff commenced this civil action by filing a verified complaint in Superior Court, Wake County. Through this suit plaintiff seeks an order declaring the requested documents to be public records and an order compelling defendants to provide copies of the documents for plaintiff to examine. On 13 March 2008,

defendants filed their answer and moved the trial court to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). The trial court entered an order granting defendants' motion on 21 July 2008 and dismissed the complaint with prejudice. Plaintiff then appealed to the Court of Appeals, which affirmed the trial court in a divided opinion issued on 3 November 2009. *State Employees Ass'n of N.C., Inc. v. N.C. Dep't of State Treasurer,* —— N.C. App. ——, ——, 685 S.E.2d 516, 519 (2009). The dissenting judge at the Court of Appeals opined that plaintiff had sufficiently alleged the substantive elements of a cause of action under the Public Records Act. *Id.* at ——, 685 S.E.2d at 520-21 (Elmore, J., dissenting). Plaintiff timely appealed as of right to this Court based on the dissent.

## ANALYSIS

An appellate court conducts a de novo review when considering a trial court's dismissal of a complaint under North Carolina Rule of Civil Procedure 12(b)(6). "[W]e determine 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. In ruling upon such a motion, the complaint is to be liberally construed . . . .' " *Shepard v. Ocwen Fed. Bank, FSB,* 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006) (quoting *Meyer v. Walls,* 347 N.C. 97, 111-12, 489 S.E.2d 880, 888 (1997) (internal citation omitted)). Dismissal is warranted if an examination of the complaint reveals that no law supports the claim, or that sufficient facts to make a good claim are absent, or that facts are disclosed which necessarily defeat the claim. *Wood v. Guilford Cty.,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

Government agencies and officials exist for the benefit of the people, and "an informed citizenry [is] vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978) (citations omitted). One of our nation's founding fathers, James Madison, once warned: "A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives." Letter from James Madison to W.T. Barry (Aug. 4, 1822), *in* The Complete Madison 337 (Saul K. Padover ed., Harper & Bros. 1953) (1865).

Our legislature has provided a means for fostering openness and transparency in government through the Public Records Act, codified at Chapter 132 of the North Carolina General Statutes. "[I]t is clear that the legislature intended to provide that, as a general rule, the public would have liberal access to public records." *News & Observer Publ'g Co. v. State ex rel. Starling*, 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984) (citation omitted). The Public Records Act enables citizens to "obtain copies of their public records" unless the records are specifically exempted by law. N.C.G.S. § 132-1(b). Public records include "all documents . . . made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." *Id.* § 132-1(a).

The Public Records Act supplies a cause of action when any government agency or subdivision denies rights provided by that statute:

Any person who is denied access to public records for purposes of inspection and examination, or who is denied copies of public records, may apply to the appropriate division of the General Court of Justice for an order compelling disclosure or copying, and the court shall have jurisdiction to issue such orders.

*Id.* § 132-9(a). Based on a plain reading of the statute, three elements are required to state a prima facie case: (1) a person requests access to or copies of public records from a government agency or subdivision, (2) for the purpose of inspection and examination, and (3) access to or copies of the requested public records are denied. *Id.*

In this case there is no disagreement that plaintiff made a public records request to inspect and examine certain documents. Defendants contend that the complaint was "correctly dismissed . . . because Plaintiff alleged absolutely no specific denial—not even upon information and belief." To the contrary, we find sufficient support for the allegation that plaintiff has been "denied access" to requested public records. Through five separate letters from plaintiff's executive director encompassing the period between 1 March 2007 and 24 January 2008, plaintiff made requests or clarifications regarding the public records it sought. A copy of each letter was fully incorporated into the complaint by reference and was attached thereto. Plaintiff's final letter to defendants before commencing suit included specific reasons why plaintiff believed that additional public records implicated by its initial requests existed, but had not been

provided. For example, in regards to its 1 March 2007 request, plaintiff stated, *inter alia*:

> [I]t is clear that not all documents containing correspondence from Forbes has been provided. The January 19, 2007, 3:43 p.m. e-mail from Kai Falkenberg to Ms. Lang refers to an attached letter "a copy of which —with enclosures— has also been sent to you by fax." You have provided neither that letter nor the enclosures. Moreover, Neil Weinberg's message on the same date refers to a letter faxed to Ms. Lang from Forbes' attorney. If this is not the same letter referred to by Ms. Falkenberg, then you have not provided a copy of it.
>
> In addition, except for some responses that are attached to the Forbes e-mails, you have not provided all responses from Ms. Lang to Forbes. For example, attached to the February 14, 2007, e-mail message from Jason Storbakken is an e-mail from Ms. Lang stating: "Please see answers inserted in your original e-mail below." However, you have not produced the e-mail that contains Ms. Lang's answers. Moreover, attached to Jason Storbakken's message of February 14, 2007, 6:16 p.m., is a message stating: "On 2/14/07 PM, 'Sara Lang' . . . wrote:" but the text of Ms. Lang's message is omitted. It is difficult for me to draw any conclusion except that Ms. Lang's message has been intentionally deleted from the document.
>
> Finally, based on the size of the fee paid to the retained law firm and, thus, the number of hours that firm must have worked on this issue, it would appear that there must have been electronic or written correspondence between your office and that law firm regarding the Forbes public information request. However, no copies of any such correspondence have been produced.

Thus, plaintiff's allegations that additional public records exist that have not yet been disclosed are based on reasonable inferences. Notably, these allegations were included in a letter dated 24 January 2008, which was six days *after* the director of communications for defendant department expressed by letter the stance that defendants were "pleased to *complete*" plaintiff's "expanded March 1 request." (Emphasis added.) The contention that the 1 March 2007 request was complete, in light of plaintiff's ongoing allegations that available public records are still being improperly omitted from disclosure, brings this dispute to a crescendo, and for purposes of the complaint, suffi-

ciently alleges the substantive element that plaintiff has been "denied access to public records." *See* N.C.G.S. § 132-9(a).

A second letter from the director of communications for defendant department dated 18 January 2008 addressed plaintiff's 16 October 2007 public records request. This letter expressed that defendants were "working to fulfill this request in accordance with our public records policy of 'first come, first served.' " In his response letter dated 24 January 2008, plaintiff's executive director was unconvinced and commented: "[I]t is difficult for me to believe that there are other public record requests pending in your office that are more longstanding than my request made more than three months ago." Section 132-6 charges "[e]very custodian of public records" to "furnish copies" of requested public records "*as promptly as possible.*" *Id.* § 132-6 (emphasis added). Whether the length of defendants' delay in producing copies of the requested public records constitutes a denial of access is not a question we need address at this time because we have found plaintiff's complaint sufficient on other grounds.

Furthermore, based on section 132-6(a), which limits a custodian's duty to "public records . . . in the custodian's custody," *id.*, defendants contend that "possession" is a necessary element of a cause of action under the Public Records Act. Moreover, citing *Gannett Pacific Corp. v. North Carolina State Bureau of Investigation*, 164 N.C. App. 154, 595 S.E.2d 162 (2004), the Court of Appeals majority in this case affirmed the dismissal of plaintiff's complaint, finding that defendant department "correctly reviewed their records, determined which public records were in their possession, and produced the responsive public records." *State Employees Ass'n of N.C., Inc.,* — N.C. App. at —, 685 S.E.2d at 519. However, section 132-9(a) provides plaintiff its cause of action, and that section makes no mention of a possession element. Of course, defendants may choose to rely on section 132-6(a) or other statutory provisions as potential defenses, but defendants will have opportunities through other proceedings to further advocate the position that it has complied with its burden. The Court of Appeals majority's reliance on *Gannett* is misplaced and does not comport with the actual holding of that case. The panel in *Gannett* remanded so that the trial court and not the state agency, which in *Gannett* was the North Carolina State Bureau of Investigation, would make the critical determination of whether the agency had possession of certain public records under the Public Records Act. 164 N.C. App. at 161, 595 S.E.2d at 166.

IN RE D.L.H.

[364 N.C. 214 (2010)]

The final determination of possession or custody of the public records requested is not properly conducted by the state agency itself. The approach that the state agency has the burden of compliance, subject to judicial oversight, is entirely consistent with the policy rationale underpinning the Public Records Act, which strongly favors the release of public records to increase transparency in government. Judicial review of a state agency's compliance with a request, prior to the categorical dismissal of this type of complaint, is critical to ensuring that, as noted above, public records and information remain the property of the people of North Carolina. Otherwise, the state agency would be permitted to police its own compliance with the Public Records Act, a practice not likely to promote these important policy goals.

The only task at hand for purposes of Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Stated in terms of the three grounds for dismissal under Rule 12(b)(6), *Wood*, 355 N.C. at 166, 558 S.E.2d at 494, plaintiff's complaint reveals that its claim is supported by the Public Records Act, states facts sufficient to allege the substantive elements of a claim for denied access to requested public records, and discloses no facts that necessarily defeat the claim. Thus, we conclude that no deficiencies warrant dismissal of the complaint at this stage.

For the foregoing reasons, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the trial court for additional proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.