IN THE COURT OF APPEALS OF NORTH CAROLINA

Nos. COA15-1209, COA15-1210

Filed: 19 July 2016

Wake County, Nos. 14 CVS 6788

JOHN NEWTON, HARRY SCHATMEYER, CHERYL SCHATMEYER, JUANVELASQUEZ, ROBERT THOMPSON, KRISTI THOMPSON, DALE F. CAMARA, A.J. RICE, VIOLANE RICE, RANDALL SLAYTON, MARIE PALADINO, MARCAR ENTERPRISES, INC., MAYNARD SIKES, NANCY SIKES, BILLY BACON, BEVERLY BACON, SABINA HOULE, KENNETH COURNOYER, LAWANNA COURNOYER, GARY GROSS, ELKE GROSS, JACK DONNELLY, and JOSEPH KINTZ, on behalf of themselves and all persons similarly situated, Plaintiffs,

RICHARD B. SPOOR, Plaintiff,

v.

JOHN BARTH, JR., and JOHN BARTH, (SR.), Defendants.

Wake County, No. 14 CVS 10215

DIORIO FOREST PRODUCTS, INC., 919 MARKETING COMPANY, INC., and JAMES B. ENTERPRISES, INC., formerly EPPERSON LUMBER SALES, INC., on behalf of themselves and all entities similarly situated, Plaintiffs,

and RICHARD B. SPOOR, Plaintiff,

v.

JOHN BARTH, JR., and JOHN BARTH (SR.),  Defendants.

Appeals by Plaintiffs John Newton, *et al.*, from Order and Judgment entered 8 June 2015 and Plaintiffs Diorio Forest Products, Inc., *et al.*, from Order and Judgment entered 18 June 2015 by Judge Robert T. Sumner in Wake County Superior Court. Heard in the Court of Appeals 9 June 2016.

*Barry Nakell, and Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, for Plaintiffs.*

*Manning Fulton & Skinner, P.A., by Judson A. Welborn and J. Whitfield Gibson, for Defendant John M. Barth, Jr.*

*Wilson & Ratledge, PLLC, by Reginald B. Gillespie, Jr., and N. Hunter Wyche, Jr., and Foley & Lardner LLP, by Michael J. Small and David B. Goroff, for Defendant John M. Barth.*

STEPHENS, Judge.

Plaintiffs John Newton, *et al.*, and Diorio Forest Products, Inc., *et al.*, appeal from the trial court's Orders and Judgments dismissing their claims against Defendants John M. Barth, Jr. ("Junior"), and John M. Barth ("Senior"), based on lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Plaintiffs argue that the trial court erred in determining they lacked standing to assert their claims and that their claims were barred by the applicable statutes of limitations. We agree, and we consequently reverse the trial court's Orders and Judgments.

*Factual Background and Procedural History*

This case arises from two separate class action lawsuits filed in Wake County Superior Court alleging claims for fraud, unfair and deceptive trade practices ("UDTP"), civil conspiracy, and punitive damages against Junior and Senior by the customers, vendors, and suppliers of AmerLink, Ltd., a North Carolina corporation that engaged in the business of selling materials and contracts for the construction

of log homes. The Newton Plaintiffs were customers of AmerLink, and the Diorio Plaintiffs were vendors and suppliers of AmerLink. Junior was AmerLink's president and CEO from 2006 to 2008. Senior is Junior's father, and although he never held any formal position with AmerLink, the Newton and Diorio Plaintiffs allege that beginning in 2007 and continuing until October 2009, Junior and Senior engaged in a fraudulent scheme to acquire control of AmerLink at a depreciated price by falsifying financial statements and other documents, secretly infusing over $2 million into AmerLink to prop up the corporation and conceal the falsified financial statements, and misrepresenting AmerLink's distressed financial condition.

The facts underlying the allegations of the Newton and Diorio Plaintiffs' complaints were previously discussed at length in this Court's opinion in a related action brought against Junior and Senior by AmerLink's founder, chairman, and former majority shareholder, Richard B. Spoor. *See Spoor v. Barth*, __ N.C. App. __, 781 S.E.2d 627, *disc. review and cert. denied*, __ N.C. __, __ S.E.2d __ (2016). As detailed therein, after becoming president and CEO of AmerLink in September 2006, Junior sought to purchase Spoor's controlling interest in the company using funds from Senior, who inspected AmerLink's facilities, inquired into the company's financial situation with its principal lender, and drafted terms for a potential purchase agreement in 2007. *Id.* at __, 781 S.E.2d at 629. No agreement was reached at that time, but Junior and Spoor eventually agreed to form a new corporation which

would serve as a vehicle for Junior to purchase Spoor's majority interest in AmerLink using $8 million in funds from Senior in exchange for shares Spoor deposited into the new corporation. *Id.* at __, 781 S.E.2d at 629-30. Spoor alleged that by January 2008, "Junior became aware that based on his mismanagement, AmerLink was facing financial difficulty," and he thereafter took steps to conceal this from Spoor and others by falsifying sales and delivery reports. *Id.* at __, 781 S.E.2d at 629. In June 2008, "Junior became aware that AmerLink was insolvent and was unable to purchase materials to fulfill its contracts," but he nevertheless continued to falsify financial and delivery reports, "directed AmerLink staff to encourage customers to enter into sales agreements with AmerLink, to send deposits and additional funds to AmerLink, and to schedule deliveries," and infused funds in excess of $2 million to prop up the company, with half of those funds coming from Senior. *Id.* In October 2008, after Spoor discovered Junior had been falsifying reports to conceal AmerLink's rapidly deteriorating financial situation, Junior was removed from his position as CEO but remained president, promised Senior would loan the corporation up to $3 million, and directed staff to continue to tell customers that new investment funds were on the way. *Id.* at __, 781 S.E.2d at 630. However, Senior provided only $300,000 in funding, and on 15 December 2008, Spoor shut down AmerLink after learning its financial situation was even worse than Junior had represented in October. *Id.* at __, 781 S.E.2d at 631.

- 4 -

On 12 February 2009, AmerLink filed for Chapter 11 bankruptcy. *Id.* In the months that followed, Junior continued to represent that additional investments of up to $8 million would be forthcoming from Senior, and at one point forged a bank statement to reflect that such loans had been deposited. *Id.* However, in August 2009, Senior informed AmerLink's bankruptcy attorney that he had no intention of providing any further financing for the company. *Id.* Thereafter, AmerLink's Chapter 11 bankruptcy proceeding was converted to a Chapter 7 bankruptcy proceeding, and, on 13 May 2010, Junior pleaded guilty to felony bankruptcy fraud. *Id.* at __, 781 S.E.2d at 631-32. On 23 April 2011, AmerLink's bankruptcy trustee filed an adversary proceeding against Junior, Senior, Spoor, and other AmerLink directors alleging claims for, *inter alia*, fraudulent conveyances, preferential transfers, breach of fiduciary duties, constructive trust, unjust enrichment, and civil conspiracy. *Id.* at __, 781 S.E.2d at 636. These charges were based on the trustee's allegations that Junior, Spoor, and other AmerLink directors

> engaged in the creation of new companies and transfer of assets to companies in an effort to sell a substantial portion of [Spoor's] ownership interest in AmerLink. The trustee also alleged that an employee stock option plan was adopted at the urging of [Spoor] and Junior effective 1 October 2005 and that [Spoor], Junior, and AmerLink's directors' actions were solely for the purpose of creating a means for [Spoor] to extract as much cash as possible from the business and for Junior to be in a position to take control of the company. This adversary proceeding was settled on 6 September 2011. The trustee dismissed with prejudice all claims and causes of action against Senior,

Junior, and [Spoor] and released them from claims by the trustee or bankruptcy estate.

*Id.* Although the bankruptcy settlement included a waiver by Spoor releasing all claims against AmerLink's bankruptcy estate, on 5 October 2011, Spoor filed a complaint alleging claims against Junior in his individual capacity for, *inter alia*, breach of contract, breach of contract as third party beneficiary, breach of fiduciary duty, fraud, punitive damages, UDTP, and civil conspiracy. *Id.* at __, 781 S.E.2d at 632. On 14 February 2012, Spoor filed his first amended complaint adding Senior as a defendant. *Id.*

That same day, the Newton Plaintiffs filed a complaint in Wake County Superior Court alleging their claims for fraud, UDTP, civil conspiracy, and punitive damages against Junior and Senior in their individual capacities. The Newton Plaintiffs voluntarily dismissed their complaint without prejudice on 23 May 2013, refiled their complaint on 22 May 2014, and filed an amended complaint on 9 June 2014. The Diorio Plaintiffs filed a substantially similar complaint on 30 July 2014. In their complaints, the Newton and Diorio Plaintiffs alleged that by infusing funds into AmerLink, falsifying corporate financial statements, and directing AmerLink staff to assure customers, vendors, and suppliers that AmerLink would either comply with its contracts or receive funds that would allow it to comply with those contracts, Junior and Senior intentionally misrepresented and concealed AmerLink's financial distress in order to deceive and induce the Newton and Diorio Plaintiffs into entering

into contracts with and providing funds, materials, and services to AmerLink, thus leaving them unable to protect themselves from the company's financial problems. The Newton and Diorio Plaintiffs also alleged that they could not have discovered the facts constituting Junior's and Senior's alleged fraud and UDTP through the exercise of reasonable diligence before 1 January 2012, given that much of the information supporting those facts was not produced until after Spoor filed his lawsuit against Junior and Senior.[1]

On 11 July and 19 August 2014, our Supreme Court's Chief Justice entered separate orders designating these cases as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts. Junior and Senior subsequently filed motions to dismiss both complaints pursuant to Rules 12(b)(1) and 12(b)(6) of our State's Rules of Civil Procedure. Specifically, Junior and Senior contended that: (1) the Newton and Diorio Plaintiffs lacked standing to sue, thereby depriving the trial court of subject matter jurisdiction, because the claims they alleged in their complaints were wholly derivative of claims that properly belonged to the corporation and were already asserted, litigated, and settled by the adversary proceeding that had been brought by AmerLink's bankruptcy trustee; and (2) the claims were barred by the applicable statutes of limitations, failed to comply with the

---

[1] Although Spoor was included as a plaintiff in the initial complaints filed by both the Newton and Diorio Plaintiffs, the Newton and Diorio Plaintiffs voluntarily dismissed Spoor without prejudice from both actions on 15 October 2014.

heightened pleading requirements for alleging fraud as required by N.C.R. Civ. P. 9(b), and otherwise failed to state any basis upon which relief could be granted.

After a hearing held in Wake County Superior Court on 2 March 2015, the Honorable Robert T. Sumner, Judge presiding, the trial court concluded that the Newton and Diorio Plaintiffs lacked standing and that their claims were barred by the applicable statutes of limitations, and consequently dismissed their claims with prejudice by written orders entered 8 and 18 June 2015. The Newton and Diorio Plaintiffs filed timely notice of appeal to this Court.

*Analysis*

*A. Standing*

The Newton and Diorio Plaintiffs argue first that the trial court erred in dismissing their claims against Junior and Senior based on its conclusion that they lacked standing to sue. Specifically, the Newton and Diorio Plaintiffs contend that the adversary proceeding filed by the AmerLink bankruptcy trustee does not preclude their claims for fraud, UDTP, civil conspiracy, and punitive damages against Junior and Senior in their individual capacities because these claims were never asserted during the adversary proceeding and because these claims belong to the Newton and Diorio Plaintiffs, rather than the AmerLink bankruptcy estate. We agree.

"In order for a court to have subject matter jurisdiction to hear a claim, the party bringing the claim must have standing." *Revolutionary Concepts, Inc. v.*

*Clements Walker PLLC,* 227 N.C. App. 102, 106, 744 S.E.2d 130, 133 (2013) (citation omitted). "[S]tanding to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer,* 209 N.C. App. 369, 379, 705 S.E.2d 757, 765 (citation and internal quotation marks omitted), *disc. review denied*, 365 N.C. 188, 707 S.E.2d 243 (2011). "[T]his Court's review of an order granting a Rule 12(b)(1) motion to dismiss is *de novo.*" *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010), *disc. review improvidently allowed*, 365 N.C. 3, 705 S.E.2d 734 (2011).

"When a corporation enters bankruptcy, any legal claims that could be maintained *by the corporation* against other parties become part of the bankruptcy estate, and claims that are part of the bankruptcy estate may only be brought by the trustee in the bankruptcy proceeding." *Keener Lumber Co. v. Perry,* 149 N.C. App. 19, 25, 560 S.E.2d 817, 822 (citations omitted; emphasis in original), *disc. review denied and appeal dismissed*, 356 N.C. 164, 568 S.E.2d 196 (2002). Federal law authorizes the bankruptcy trustee to: (1) bring suit on behalf of the bankruptcy estate; and (2) avoid or recover fraudulent conveyances of property from the bankrupt debtor for the benefit of all creditors of the bankruptcy estate. *See* 11 U.S.C. §§ 541(a), 544, 548 (2012). However, as the United States Supreme Court recognized in *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416, 433-34, 32 L. Ed. 2d 195, 206-07 (1972), the

trustee's authority to bring suit on behalf of the bankruptcy estate does not extend to state law claims by the estate's creditors against third parties.[2] Thus, an action that is "personal" to a creditor is not property of the bankruptcy estate. *See, e.g., In re Bostic Constr., Inc.*, 435 B.R. 46, 60 (M.D.N.C. 2010). The issue of whether a claim is personal to a creditor depends on state law. *See id.; see also Keener*, 149 N.C. App. at 26, 560 S.E.2d at 822.

The North Carolina Supreme Court has recognized that, as a general matter, a corporate officer "can be held personally liable for torts in which he actively participates," even when such torts were "committed when acting officially" and "regardless of whether the corporation is liable." *Wilson v. McLeod Oil Co., Inc.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990) (citations omitted), *reh'g denied*, 328 N.C. 336, 402 S.E.2d 844 (1991). In the context of a bankruptcy proceeding,

> [s]hareholders, creditors, or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation. Recovery is available, naturally, when the defendant owes an individual shareholder, creditor, or guarantor a special duty, or when the individual suffered an injury separate and distinct from that suffered by other shareholders, creditors, or guarantors.

---

[2] Although *Caplin* was decided prior to the enactment of the federal Bankruptcy Code, it remains good law, *see, e.g.*, *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 986 (11th Cir. 1990) ("*Caplin* has been held to remain the law under the revised bankruptcy statutes."), and was recently cited by the United States Court of Appeals for the Second Circuit to support its holding that the bankruptcy trustee in proceedings arising from the liquidation of Bernie Madoff's investment firm lacked standing to sue several third parties on behalf of individual customers defrauded by Madoff's Ponzi scheme. *See In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 67 (2d Cir. 2013).

*Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220-21 (1997) (citations and ellipsis omitted). Therefore, the creditors of a bankruptcy estate may prosecute individual actions against a third party if they "can show either (1) that the wrongdoer owed [them] a special duty, or (2) that the injury suffered by the [creditors] is personal to [them] and distinct from the injury sustained by the corporation itself." *Id.* at 661, 488 S.E.2d at 221.

In the present case, the Newton and Diorio Plaintiffs do not allege that Junior or Senior owed them any special duty, so our analysis on the standing issue focuses solely on whether the injuries they have alleged are personal and belong to them. During the hearing on their motion to dismiss and in their briefs and oral arguments to this Court, Junior and Senior argued that the Newton and Diorio Plaintiffs lacked standing to bring these claims because the harms they alleged were generalized injuries to AmerLink and had already been litigated by the bankruptcy estate trustee during the adversary proceeding. However, this Court rejected a strikingly similar argument in *Spoor v. Barth*, where we reversed the trial court's grant of summary judgment in favor of Junior and Senior, based in part on our conclusion that the court erred in concluding that Spoor lacked standing to bring suit. *See Spoor*, __ N.C. App. at __, 781 S.E.2d at 636. As demonstrated in *Spoor*, the adversary proceeding brought by the AmerLink bankruptcy trustee focused on allegations that by setting up an employee stock option plan and creating and transferring assets into new companies

in order to facilitate the sale of Spoor's majority ownership interest in AmerLink, Junior, Senior, and Spoor improperly diverted corporate assets for their own benefit. *See id.* Because these claims for, *inter alia*, fraudulent conveyances and preferential transfers were rooted in conduct that depleted the AmerLink bankruptcy estate at the expense of all its creditors, they properly belonged to the trustee. However, there was no indication that the AmerLink bankruptcy trustee ever settled, brought, or even discovered, any claims based on the fraudulent acts that Spoor alleged in his complaint as the basis for his breach of contract, fraud, and UDTP claims against Junior and Senior. *See id.* Indeed, because Spoor's claims were based on Junior's and Senior's conduct in their individual capacities to mislead Spoor by concealing AmerLink's dire financial condition and induce Spoor, in his individual capacity, to invest his majority interest in AmerLink into a newly created company in exchange for $8 million Junior and Senior promised but never paid, we concluded that the injuries Spoor alleged were separate and distinct from any generalized harm suffered by AmerLink or its shareholders. *See id.* We therefore held that the claims belonged to Spoor alone, and we consequently rejected Junior's and Senior's argument that AmerLink's bankruptcy trustee had any, let alone exclusive, standing to bring those claims. *See id.*

Here, the Newton and Diorio Plaintiffs' claims against Junior and Senior in their individual capacities arise from essentially the same set of facts as alleged in

*Spoor*—namely, the cash infusions and falsified financial statements Junior and Senior engaged in throughout 2008 to conceal AmerLink's financial distress, as well as Junior's repeated assurances to Spoor and AmerLink's staff, customers, vendors, and suppliers that the company would receive additional funds and continue to perform its contractual obligations. As in *Spoor*, despite characterizations by Junior and Senior to the contrary, there is no indication in the record before us that the AmerLink bankruptcy trustee brought or settled any action related to, or ever discovered, the facts underlying these allegations.

Junior and Senior nevertheless contend that, unlike in *Spoor*, the injuries the Newton and Diorio Plaintiffs allege are injuries to AmerLink itself, shared by all its creditors, and therefore properly belonged to the bankruptcy trustee. In support of their argument, Junior and Senior rely on cases holding that bankruptcy estate creditors were barred from suing third parties for injuries arising from pre-bankruptcy conveyances of corporate assets because such fraudulent conveyances and preferential transfers resulted in injuries to the corporations themselves, and thus, were injuries shared in common by every creditor to the bankruptcy estate, for which federal law expressly vests the trustee with exclusive standing to bring suit. *See, e.g.*, *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that sureties of bankrupt corporation lacked standing to sue third party to whom corporate property was conveyed prior to bankruptcy filing because

their claim had the same underlying focus as the bankruptcy trustee's claim for avoiding the conveyance), *cert. denied*, 528 U.S. 1156, 145 L. Ed. 2d 1073 (2000); *In re Bridge Info. Sys., Inc.*, 344 B.R. 587, 594 (E.D. Mo. 2006) (finding no standing for bankruptcy estate creditors to bring claims for fraud against corporate shareholders, who prior to bankruptcy caused the corporation to acquire a target company and then transferred the corporation's interest in that company to themselves, because their suit was no different from the bankruptcy trustee's claim for fraudulent conveyance).

We are not persuaded. To be sure, the allegations in the Newton and Diorio Plaintiffs' complaints do relate to conduct that undoubtedly harmed AmerLink itself. However, the gravamen of the Newton and Diorio Plaintiffs' fraud and UDTP claims is not merely that they were injured by AmerLink's collapse and the resulting breach of its contractual obligations to them, but instead that they *never would have suffered any injury* if they had not been fraudulently induced into entering into contracts with AmerLink as a result of misrepresentations made by AmerLink staff acting at Junior's direction throughout 2008, when Junior was already aware of the company's financial distress. In their complaints, the Newton and Diorio Plaintiffs detail how each member of their respective classes of AmerLink's customers, vendors, and suppliers relied on the alleged misrepresentations when entering into their individual contracts with AmerLink on various dates and for varying amounts, thereby resulting in injuries to themselves in their individual capacities. Junior and

Senior argue that these alleged injuries are not separate and distinct because nearly every creditor of AmerLink had a contract that AmerLink breached, and they complain that if the Newton and Diorio Plaintiffs have standing to pursue their claims, then so could every other creditor exposed to AmerLink's financial distress, which they insinuate would undermine the central purpose of bankruptcy to provide an orderly process for disposing of claims against the estate. But this argument ignores the fact that the United States Supreme Court expressly contemplated exactly this sort of creditor class action suit when it reasoned in *Caplan* that there was no need to empower a bankruptcy trustee to bring actions on behalf of creditors against third parties because "Rule 23 of the Federal Rules of Civil Procedure, which provides for class actions, avoids some of the[] difficulties" that would ensue from allowing individual creditors to sue separately. *Caplin*, 406 U.S. at 433, 32 L. Ed. 2d at 206. Moreover, Junior and Senior cite no authority to support their implicit premise that the AmerLink bankruptcy proceeding ought to somehow immunize them from liability for prior acts of fraud undertaken in their individual capacities. Because we conclude that the injuries arising from the alleged fraudulent misrepresentations that induced each class member's individual contract are separate and distinct from any injury to AmerLink or any other creditor of the bankruptcy estate, we hold that these claims belong to the Newton and Diorio Plaintiffs, rather than the AmerLink trustee. Consequently, we hold that the Newton

and Diorio Plaintiffs have standing to sue, and that the trial court erred in granting Junior's and Senior's motion to dismiss for lack of subject matter jurisdiction.

### B. Statute of limitations

The Newton and Diorio Plaintiffs argue next that the trial court erred in granting Junior's and Senior's Rule 12(b)(6) motion to dismiss their claims because they failed to bring suit within the applicable statute of limitations. We agree.

This Court reviews *de novo* an order dismissing an action pursuant to N.C.R. Civ. P. 12(b)(6). *See State Emps. Ass'n of N.C., Inc. v. N.C. Dep't of State Treasurer*, 364 N.C. 205, 210, 695 S.E.2d 91, 95 (2010). In doing so, we must "determine whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. In ruling upon such a motion, the complaint is to be liberally construed." *Id.* (citation, internal quotation marks, and ellipsis omitted). "Dismissal is warranted if an examination of the complaint reveals that no law supports the claim, or that sufficient facts to make a good claim are absent, or that facts are disclosed which necessarily defeat the claim." *Id.* (citation omitted).

"In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises."

*Pierson v. Buyher,* 330 N.C. 182, 186, 409 S.E.2d 903, 905 (1991) (citation and ellipsis omitted). An action alleging claims for fraud and related conspiracy must be brought within three years, and "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud . . . ." N.C. Gen. Stat. § 1-52(9) (2015). "For purposes of [section] 1-52(9), discovery means either actual discovery or when the fraud should have been discovered in the exercise of reasonable diligence under the circumstances." *Forbis v. Neal,* 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007) (internal quotation marks omitted). "[W]here a person is aware of facts and circumstances which, in the exercise of due care, would enable him or her to learn of or discover the fraud, the fraud is discovered for purposes of the statute of limitations." *Jennings v. Lindsey,* 69 N.C. App. 710, 715, 318 S.E.2d 318, 321 (1984). "Ordinarily, a jury must decide when fraud should have been discovered in the exercise of reasonable diligence under the circumstances. This is particularly true when the evidence is inconclusive or conflicting." *Forbis,* 361 N.C. at 524, 649 S.E.2d at 386. The statute of limitations for a UDTP claim is four years. N.C. Gen. Stat. § 75-16.2 (2015). "Under North Carolina law, an action [for UDTP] accrues at the time of the invasion of [the] plaintiff's right. For actions based on fraud, this occurs at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence." *Nash v. Motorola Commc'ns & Elecs., Inc.*, 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989) (citations and internal quotation marks

omitted; emphasis in original), *affirmed per curiam*, 328 N.C. 267, 400 S.E.2d 36 (1991).

In the trial court, Junior and Senior argued that the Newton and Diorio Plaintiffs' actions were barred by the statute of limitations since they should have discovered the conduct underlying their fraud and UDTP claims in December 2008 when AmerLink closed its doors, because it was clear at that point that AmerLink would breach its contractual obligations to them. We rejected a similar argument in *Spoor*. There, we reversed the trial court's grant of summary judgment in favor of Senior based on a lapse of the statute of limitations, reasoning based on our Supreme Court's holding in *Forbis* that because the evidentiary forecast presented a genuine issue of material fact as to when Spoor discovered or should have discovered the alleged fraudulent conduct, the issue was one for the jury's determination. __ N.C. App. at __, 781 S.E.2d at 635.

Here, we reach a similar result. The Newton and Diorio Plaintiffs are suing for fraud and UDTP based on a conspiratorial course of conduct by Junior and Senior that they allege began in 2007, continued until at least August 2009, and could not have been discovered until 1 January 2012. While the injuries the Newton and Diorio Plaintiffs suffered may have been apparent once they learned that AmerLink could not perform its contractual obligations in December 2008, our General Statues make clear that the statute of limitations is triggered not upon discovery of an injury, but

upon "the discovery by the aggrieved party of the facts constituting the fraud . . . ." N.C. Gen. Stat. § 1-52(9). We find it difficult to discern how AmerLink's mere act of closing its doors somehow laid plain the existence of a fraudulent scheme that the Newton and Diorio Plaintiffs allege had not even been completed yet, especially in light of the fact that neither the AmerLink bankruptcy trustee, who brought the adverse proceeding, nor the United States Attorney, who prosecuted Junior for bankruptcy fraud, discovered the actions underlying these claims, either. In their complaints, the Newton and Diorio Plaintiffs allege that as corporate outsiders, they could not have discovered any of the facts underlying their claims before Spoor, a corporate insider, exposed them by filing his initial complaint against Junior in October 2011 and his first amended complaint adding Senior as a defendant in February 2012. Taking these allegations as true—as we must, given the procedural posture of this case, *see State Emps. Ass'n of N.C., Inc.*, 364 N.C. at 210, 695 S.E.2d at 95—we conclude that because they filed their respective complaints well within three years of Spoor's initial complaint, the Newton and Diorio Plaintiffs commenced their actions within the three-year statute of limitations for fraud claims and the four-year statute of limitations for UDTP claims. Consequently, we hold that the trial court erred in granting Junior's and Senior's motion to dismiss based on a lapse of the applicable statutes of limitations.

Junior and Senior present a series of related arguments as independent bases to upold the trial court's dismissal pursuant to N.C.R. Civ. P. 12(b)(6), but they are unavailing. Specifically, Senior contends that dismissal of the fraud claims was proper as to him because the Newton and Diorio Plaintiffs' complaints failed to allege their claims for fraud with sufficient particularity as required by N.C.R. Civ. P. 9(b). "The elements of fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (citation omitted); *see also Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981) ("[I]n pleading actual fraud the particularity requirement [imposed by N.C.R. Civ. P 9(b)] is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations."). Senior argues that the Newton and Diorio Plaintiffs failed to state a claim for fraud against him because their complaints contain no specific allegations that Senior himself ever personally made any representations to, intended to deceive, deceived, or caused any injury to any member of the plaintiff classes in either action. Senior contends that the UDTP claims against him fail to state a UDTP claim "for the same reasons."

These two arguments both depend on the validity of Senior's argument that the Newton and Diorio Plaintiffs also failed to properly plead their claims for civil conspiracy. Our case law makes clear that "to state a claim for civil conspiracy, a complaint must allege a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000) (citations and internal quotation marks omitted), *disc. review denied*, 353 N.C. 378, 547 S.E.2d 14, *appeal withdrawn*, 354 N.C. 219, 553 S.E.2d 684 (2001). Moreover, it is well established that "[i]f two or more persons conspire or agree to engage in an unlawful enterprise, each is liable for acts committed by any of them in furtherance of the common design and the manner or means used in executing the common design; the fact that one conspirator is the instigator and dominant actor is immaterial on the question of the guilt of the other." *Curry v. Staley*, 6 N.C. App. 165, 169, 169 S.E.2d 522, 525 (1969) (citations omitted). Senior's argument on this point appears to be based on selective quotations from the subsections in both complaints that formally allege causes of action for civil conspiracy by stating:

> The acts and agreements of [Senior] and [Junior] constitute a civil conspiracy, which existed for wrongful acts to be committed, and which were actually committed, by said [Senior] and [Junior] for the purpose of said civil conspiracy.

Senior contends these allegations are conclusory and legally insufficient because they fail to allege any specific details of any conspiratorial agreement he made with Junior. This argument fails, however, because it ignores the fact that the relevant paragraphs in both complaints expressly incorporate all prior allegations made, including, *inter alia*, that Junior and Senior "acted in concert and each acted as the agent of the other in a plan or scheme" to acquire Spoor's majority stake in AmerLink. The complaints also provide dozens of paragraphs of allegations extensively detailing the specific actions both Junior and Senior took over a period of several years to further this scheme by concealing AmerLink's financial distress, as well as Junior's directions to AmerLink staff throughout 2008, when he knew the company was nearly insolvent, to continue entering into contracts with the Newton and Diorio Plaintiffs and to assure them that AmerLink had or would soon receive funds that would allow it to honor its contractual obligations to them. The allegations in both complaints further outline the specific dates when the Newton and Diorio Plaintiffs entered their contracts and the specific amounts of damages suffered by each member of the class when Junior's and Senior's scheme finally unraveled. Because the complaints are "replete with allegations of a conspiracy by and between the defendants, acts done by some or all of the defendants in furtherance of that alleged conspiracy, and injury" to the Newton and Diorio Plaintiffs, we reject Senior's argument that their complaints failed to state a claim for civil conspiracy. *Norman*, 140 N.C. App. at 416, 537 S.E.2d

at 265. Further, given the extensive details provided in the complaints regarding the nature and circumstances surrounding Junior's misrepresentations and the injuries the Newton and Diorio Plaintiffs suffered as a result, we also reject Senior's argument that the complaints failed to state a claim for fraud with sufficient particularity, as well as Senior's argument that the Newton and Diorio Plaintiffs failed to state a claim for UDTP. S*ee, e.g.*, *Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred. Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts.") (citation, internal quotation marks, and ellipsis omitted).

Finally, we reject Junior's and Senior's argument that the claims for civil conspiracy and punitive damages must be dismissed. Junior and Senior are correct that these cannot survive as separate causes of action. *See, e.g.*, *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) ("[T]here is not a separate civil action for civil conspiracy in North Carolina.") (citation omitted), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 249 (2006); *Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000) ("As a rule, you cannot have a cause of action for punitive damages by itself. If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award."). However, their argument on this

point fails because it presumes the trial court was correct in determining that the Newton and Diorio Plaintiffs' complaints for fraud and UDTP should be dismissed.

Accordingly, we hold that the trial court erred in dismissing the Newton and Diorio Plaintiffs' complaints, and that its Orders and Judgments must be, and hereby are,

REVERSED.

Judges McCULLOUGH and ZACHARY concur.