IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1126

 Filed: 19 November 2019

Wake County, No. 16 CVS 15006

NICHOLAS A. OCHSNER, Plaintiff,

 v.

N.C. DEPARTMENT OF REVENUE, Defendant.

 Appeal by plaintiff from order entered 4 June 2018 by Judge R. Allen Baddour,

Jr. in Superior Court, Wake County. Heard in the Court of Appeals 8 May 2019.

 Whitley Law Firm, by Ann C. Ochsner, for plaintiff-appellant.

 Attorney General Joshua H. Stein, by Assistant Solicitor General Kenzie M.
 Rakes and Deputy General Counsel Blake W. Thomas, for defendant-appellee.

 STROUD, Judge.

 Nicholas Ochsner (“Plaintiff”) appeals from the trial court’s order granting the

North Carolina Department of Revenue’s (“NCDOR” or “Defendant”) motion to

enforce a mediated settlement agreement and dismissing the action as moot. After

Defendant produced over 13,000 pages of responsive documents, conducted searches

of its employees and other persons identified as having potentially responsive records,

and provided sworn statements that it had conducted the searches and produced all

records discovered, the trial court properly determined Defendant had completed its

obligations under the parties’ Memorandum of Understanding and thus denied

Plaintiff’s motion for enforcement and dismissed the action as moot. In addition, the
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

trial court properly exercised its judicial oversight function under the Public Records

Act. We therefore affirm.

 I. Factual and Procedural Background

 On 7 December 2016, Plaintiff filed a “Complaint and Motion for Order to Show

Cause” arising out of his request for production of public records from Defendant.

Plaintiff alleged that on 8 June 2016, he requested production of public records from

Defendant. He alleged that he filed this request “in his capacity as an investigative

reporter for WBTV, the CBS affiliate serving the Charlotte, North Carolina market.”

He alleged in “late 2015 and early 2016” he “reported multiple stories pertaining to

government officials, including members of the General Assembly and Governor Pat

McCrory.” In February, March, and June of 2016, he received notices from Defendant

regarding “alleged taxes owed for tax year 2011.” Plaintiff had requested production

under the North Carolina Public Records Act, of these records:

 -All written communication, including but not limited to
 email, text messages, letters or memos sent and received
 between NCDOR employees and any member of the North
 Carolina General Assembly, including but not limited to
 the Office of Speaker Tim Moore, their staff and other
 representatives between September 1, 2015 and June 1,
 2016 containing the following words: “Oschner”,
 “Reporter”, “WBTV”, “Charlotte”, “2011”, “audit”, or “taxes”

 -All written communication, including but not limited to
 emails, text messages, letters or memos, sent and received
 between NCDOR employees of the Office of the Governor
 between September 1, 2015 and June 1, 2016 containing
 the following words: “Oschner”, “Reporter”, “WBTV”,

 -2-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 “Charlotte”, “2011”, “audit”, or “taxes”

 -All notices of unpaid taxes, collection notices and other
 letters regarding unpaid taxes for the 2011 tax year sent
 by NCDOR between September 1, 2015 and June 1, 2016.

 -The entire file and any and all documents related to the
 tax account of Nicholas A. Ochsner

 Defendant ’s first response was an email on 9 June 2016, stating that a search

would be initiated and the records would be provided as soon as possible. On 14 July,

2016, Defendant provided its initial response which included eight pages of internal

documents related to Plaintiff’s tax account. Plaintiff then “replied to NCDOR to

address the deficiencies in” the response. On 8 August 2016, Defendant responded to

several questions posed by Plaintiff and provided additional documents to Plaintiff.

Defendant noted that it had narrowed the search due to the overly-broad search

terms “taxes, audit, and Charlotte” to find email “which might conceivably pertain to

your particular tax situation.” Defendant also certified that it had confirmed no

private email addresses and “non-state issued phones” were used in handling his tax

matter. Defendant described the various divisions within the NCDOR which may

have been involved with the “resolution of your tax matter” and efforts made to search

for additional responsive documents and provided six additional documents and

Plaintiff’s previous state tax returns and corresponding payment information.1

1Under North Carolina General Statute § 132-6, “[n]o person requesting to inspect and examine public
records, or to obtain copies thereof, shall be required to disclose the purpose or motive for the request.”

 -3-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Plaintiff’s complaint included attachments of additional correspondence by email and

letter between Plaintiff, his counsel, and Defendant, seeking to address Plaintiff’s

questions regarding the scope of Defendant’s search and his allegations of non-

compliance with his request.

 On 9 December 2016, the Senior Resident Superior Court Judge entered an

order assigning this case under Local Rules For Civil Superior Court, Tenth Judicial

District, Rule 2.2 to the Honorable R. Allen Baddour, Jr. Plaintiff did not request

mediation and his counsel informed Defendant by email that Plaintiff believed

“mediation is not likely to yield a different result and would not be fruitful.”

Defendant responded that mediation was required by North Carolina General

Statute § 7A-38.3E.2 On 28 December 2016, the trial court sua sponte issued a

Litigation Hold Order requiring the parties to preserve all potentially relevant

records, both paper and electronic, pending resolution of the action. On 12 January

2017, the trial court issued an order requiring the parties to select a mediator and

participate in a mediated settlement conference on or before 10 February 2017.

N.C. Gen. Stat. § 132-6(b) (2017). Although Plaintiff was not required to disclose the purpose of his
request, his complaint includes allegations regarding the purpose of his request. We note this purpose
only because Plaintiff identified the purpose and correspondence between the parties both before and
after the filing of the complaint addressed this purpose in seeking to identify all responsive documents.

2 Defendant was correct. This Court held in Tillett v. Town of Kill Devil Hills, that “in order to confer
jurisdiction upon the trial court in a Public Records Act suit, the plaintiff must initiate mediation
within 30 days of the filing of the responsive pleading as required by N.C. Gen. Stat. § 7A-38.3E(b).”
___ N.C. App. ___, ___, 809 S.E.2d 145, 148 (2017). Here, mediation was initiated and completed within
30 days of Defendant’s answer being filed.

 -4-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 On 24 January 2017, Defendant filed its answer to the complaint, denying the

material allegations of the complaint and alleging that it had undertaken a

reasonable search of its records and responded “fully and in good faith” to Plaintiff’s

request. Defendant also raised various affirmative defenses and moved to dismiss

the action. Defendant also responded to Plaintiff’s first set of interrogatories and

request for production of documents.

 On 10 February 2017, the parties attended mediation and entered into a

Memorandum of Understanding (“MOU”). In the MOU, Plaintiff agreed to limit the

time scope of his request to 1 November 2015 to 1 June 2016. Defendant agreed to

“identify staff members” of six specific members of the North Carolina House of

Representatives and one State Senator within 14 days. Defendant also identified in

the MOU seven other people who had a “professional association or connection with

the legislature” and agreed to provide “information available to it pertaining” to those

individuals within 14 days. Defendant agreed to “conduct a search of everyone in the

department” of emails sent and received from personal and business email accounts;

text messages sent or received on NCDOR issued phones; text messages sent or

received on personal phones; to search for logs pertaining to instant messages or in

the absence of such logs to provide the policy in effect for NCDOR employees at the

relevant times; and to search “[a]ny and all other forms of written communication.”

The “goal of the parties” was to complete the searches within 30 days but it was

 -5-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

anticipated that production of records may occur after that time, on a rolling basis

and as the parties may agree. The MOU included essentially the same requirements

as to the Office of the Governor, for the same time period. Within 30 days, Defendant

was also required to certify the “number of notices issued, the date(s) of printing, and

the date(s) of mailing” for all “notices of unpaid taxes, collection notices, and other

letters regarding unpaid taxes for the 2011 tax year sent by NCDOR between

January 1, 2016 and March 1, 2016.” Defendant was to provide “[t]he entire file and

any and all documents related to the tax account of Nicholas A. Ochsner[,]” including

“IRMF data received on or about 31 May 2013 from the IRS;” a “statement regarding

its ability to identify, define, access, retrieve or otherwise provide the computer-

related data connected to the IRMF file” and any notes regarding Plaintiff’s tax file.3

 On 20 April 2017, the trial court held a status review hearing regarding the

ongoing production of the requested records. Plaintiff’s counsel expressed concern

regarding the accuracy and completeness of the information Defendant produced.

Plaintiff’s questions arose primarily from the methods of electronic data processing

3 IRMF data refers to information produced by the IRS Information Returns Master File system. As
part of the information produced to Plaintiff, Alan Woodard, Director of Examination for NCDOR,
described IRMF as follows: “The Information Returns Master File (IRMF) program is an automated
process utilized by the NCDOR’s Examination Division to identify taxpayers who have sources of
income in North Carolina for a tax year but did not file an income tax return. This data is provided
by the Internal Revenue Service and is used to generate notices of intent to assess issued by the
NCDOR. As referenced, this is an automated process which does not involve or require NCDR
employee involvement until communication is received from a taxpayer or a taxpayer’s representative
regarding inquisition or resolution of the matter.”

 -6-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

systems of NCDOR and the “electronic footprint” and metadata showing who accessed

Plaintiff’s information and when. Defendant’s counsel argued that Plaintiff’s request

was “getting beyond a question of access to records. We’re getting into an issue of

access to information about computer systems” which is protected by North Carolina

General Statute § 132-6.1.4 As to progress on searching for communications between

the Governor’s Office and Defendant, Defendant’s counsel reported that “we’re kind

of just working through” the “109 names between the General Assembly folks and the

office of the Governor.” She noted NCDOR had hired additional help to assist and

should be able to produce “in accordance with the schedule.”

 On 8 May 2017, while the “rolling productions” contemplated by the MOU were

still ongoing, Plaintiff served Defendant with a second set of discovery requests,

including interrogatories, requests for production, and requests for admissions. In a

letter dated 31 May 2017, Defendant informed Plaintiff that it “has met all of its

obligations under the MOU.” This included producing over 13,000 pages of

responsive documents and providing sworn and certified statements regarding the

searches performed to find the information requested as stated in the MOU.

Defendant certified that the searches required by the MOU were performed for every

4 “Nothing in this section shall require a public agency to create a computer database that the public
agency has not otherwise created or is not otherwise required to be created. Nothing in this section
requires a public agency to disclose security features of its electronic data processing systems,
information technology systems, telecommunications networks, or electronic security systems,
including hardware or software security, passwords, or security standards, procedures, processes,
configurations, software, and codes.” N.C. Gen. Stat. § 132-6.1(c) (2017).

 -7-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

employee of NCDOR, the Governor’s office, and the legislative staff members

identified under the MOU and the responsive documents were produced.

 On or about 22 June 2017, Plaintiff served Defendant with a notice of

deposition under Rule 30(b)(6) of the North Carolina Rules of Civil Procedure, seeking

substantially the same information as the second discovery requests. On or about 7

July 2017, Plaintiff filed a motion under North Carolina General Statute § 132-

1.9(d)(1) requesting entry of an order allowing access to records. In this motion,

Plaintiff alleged he made a “second, unrelated request for public records” on 4 April

2017, in which he requested:

 1) All communication—including but not limited to email,
 text message, iMessage, Slack message, letter or
 memo—sent or received between January 1, 2017 and
 April 4, 2017
 a. by the following employees: N.C. Janke, Schorr
 Johnson, Alan Woodard, Jocelyn Andrews,
 Ronald Penny, Ken Wright, and Anthony
 Edwards
 b. Containing the following key words: “Nicholas”,
 “Nick”, “Ochsner”, “Audit”, “2014”, ”lawsuit”,
 “case”, “Speaker”, “Tim”, “Moore”, or “Tenisha”,
 2) All calendar entries maintained between March 1, 2017
 and April 4, 2017 for the following individuals: N.C.
 Janke, Alan Woodard, Jocelyn Andrews, Ronald Penny,
 Jocelyn Andrews, and Anthony Edwards.
 3) The entire file: and any and all documents related to the
 tax account of Nicholas A. Ochsner created or received
 between April 1, 2015 and April 4, 2017.5

5 Tenisha S. Jacobs is a Special Deputy Attorney General and was counsel of record for Defendant.

 -8-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Defendant sent a “letter and disc” to Plaintiff on or about 30 June 2017 including its

first production of documents responsive to the request of 4 April 2017, but many of

the documents were redacted with notations to North Carolina General Statute § 132-

1.9, or 1A-1.6

 On 14 July 2017, Defendant filed a motion for protective order as to the second

set of discovery, notice of deposition, and first set of requests for admission, alleging

that Plaintiff was seeking information outside the scope of the MOU and the Public

Records Act. Defendant also filed a renewed motion to dismiss based upon North

Carolina General Statute § 1A-1, Rule 12(b)(1), (2), and (6).

 On 11 August 2017, the trial court held a hearing regarding the pending

motions from both parties. On or about 4 October 2017, Plaintiff filed a motion

requesting that the trial court make findings of fact and conclusions of law as to its

ruling denying Plaintiff’s motion for access to records and granting Defendant’s

motion for protective order. Plaintiff also filed a motion to enforce the MOU.

6 We assume “1A-1” refers to the Rules of Civil Procedure in general. Plaintiff’s motion alleges that
one document states, “Redacted per G.S. 120-130(d).” This statute refers to “[d]rafting and information
requests to a legislative employee.” N.C. Gen. Stat. § 120-130 (2017). “A drafting request made to a
legislative employee from a legislator is confidential. Neither the identity of the legislator making the
request nor, except to the extent necessary to answer the request, the existence of the request may be
revealed to any person who is not a legislative employee without the consent of the legislator.” N.C.
Gen. Stat. § 120-130(a). “Drafting or information requests or supporting documents are not ‘public
records’ as defined by G.S. 132-1.” N.C. Gen. Stat. § 120-130(d). Defendant asserted other emails were
trial preparation materials for the pending action and thus not discoverable as “public records” under
North Carolina General Statute § 132-1.9.

 -9-
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 On 16 November 2017, the trial court entered an order allowing Defendant’s

motion for protective order, denying Plaintiff’s motion for access based upon the

second request of 4 April 2017, and denying Defendant’s motion to dismiss the action.

The trial court also entered an order to seal the documents produced in response to

the 4 April 2017 request, which were reviewed in camera by the trial court based

upon Defendant’s claim of trial preparation materials.

 On 16 January 2018, Defendant filed a motion to enforce the MOU. Defendant

alleged it had produced over 13,000 pages of documents and fully satisfied the

obligations of the MOU despite Plaintiff’s claims otherwise. On 4 June 2018, the trial

court entered an order and opinion releasing the Litigation Hold Order, denying

Plaintiff’s motion to enforce the MOU, and dismissing the action as moot based upon

its determination that Plaintiff “has been given the opportunity to obtain the

requested records at issue in this civil action.” On 2 July 2018, Plaintiff filed notice

of appeal “from the Order and Opinion signed by the Honorable R. Allen Baddour, Jr.

on May 24, 2018 and filed with the Clerk on June 4, 2018 denying Plaintiff’s motion

to enforce mediated settlement agreement and dismissing the action as moot.”

 II. Standard of Review

 Both Plaintiff and Defendant filed motions to enforce the MOU, and the trial

court granted Defendant’s motion and dismissed the case based upon its

determination that Defendant had complied with the MOU. Prior cases have

 - 10 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

established that we review an order regarding enforcement of a settlement agreement

under the Public Records Act under the same standard of review as for a summary

judgment order:

 We . . . apply the summary judgment standard of review.
 It is well-settled that the standard of review for an order
 granting a motion for summary judgment requires a two-
 part analysis of “whether, on the basis of materials
 supplied to the trial court, there was a genuine issue of
 material fact and whether the moving party is entitled to
 judgment as a matter of law.” The moving party has the
 burden of demonstrating the lack of any triable issue of fact
 and entitlement to judgment as a matter of law. The
 evidence produced by the parties is viewed in the light most
 favorable to the non-moving party.

Hardin v. KCS Int’l, Inc., 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009) (citations

omitted). We therefore review the trial court’s order de novo.

 III. Scope of Appeal

 Portions of Plaintiff’s argument are based upon his contention that the trial

court abused its discretion by granting Defendant’s motion for a protective order

regarding his second discovery requests and notice of deposition. Plaintiff argues he

was “denied the ability to support a motion to enforce the MOU by deposition and

answers to his second set of interrogatories because the trial court abused its

discretion in granting NCDOR’s motion for a protective order.” But Plaintiff appealed

only from the final order, and he did not appeal from the trial court’s order granting

the protective order, so we have no jurisdiction to review the protective order.

 - 11 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 The North Carolina Rules of Appellate Procedure requires that the notice of

appeal “shall designate the judgment or order from which appeal is taken and the

court to which appeal is taken[.]” N.C. R. App. P. 3(d).

 Proper notice of appeal is a jurisdictional requirement that
 may not be waived. As a general rule, the appellate court
 obtains jurisdiction only over the rulings specifically
 designated in the notice of appeal as the ones from which
 the appeal is being taken. As exceptions to the general
 rule, there are two situations in which the appellate court
 may liberally construe a notice of appeal to determine it
 has jurisdiction over a ruling not specified in the notice.
 First, if the appellant made a mistake in designating the
 judgment intended to be appealed, then the appeal will not
 be dismissed if the intent to appeal from the judgment can
 be fairly inferred from the notice and the appellee was not
 misled by the mistake. Second, if the appellant technically
 fails to comply with procedural requirements in filing
 papers with the court but accomplishes the functional
 equivalent of the requirement, then the court may find
 compliance with the rules.

Chee v. Estes, 117 N.C. App. 450, 452-53, 451 S.E.2d 349, 350-51 (1994) (citations

omitted).

 Neither exception applies here. Plaintiff clearly identified the order from

which he was appealing and we cannot “fairly infer” that he made a mistake in

designating the order from which he appealed. Id. Nor did Plaintiff technically fail

to comply with procedural requirements in filing his notice of appeal. Moreover,

Plaintiff makes no argument on appeal that he is entitled to review the protective

order under North Carolina General Statute § 1-278. Further, the trial court’s ruling

 - 12 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

on the protective order related to Plaintiff’s second discovery requests and notice of

deposition did not deny Plaintiff a substantive legal claim. Therefore, we discern no

right to appeal the protective order under North Carolina General Statute § 1-278.

See Yorke v. Novant Health, Inc., 192 N.C. App 340, 346, 666 S.E.2d 127, 133 (2008).

We thus have no jurisdiction to review the trial court’s protective order and cannot

consider any arguments raised by Plaintiff as to any alleged error in the protective

order.7

 IV. Request for Individual “Tax Information” Under North Carolina
 General Statute § 105-259

 Before we address the issue raised by Plaintiff under the Public Records Act,

we must distinguish between the two types of information requested, as they are

governed under different statutes. A portion of Plaintiff’s request was for his own

income tax information from prior years and was not actually a request for public

records. Certain “tax information” is specifically excluded from disclosure under the

Public Records Acts. “Tax information may not be disclosed except as provided in G.S.

105-259. As used in this subsection, ‘tax information’ has the same meaning as in

G.S. 105-259.” N.C. Gen. Stat. § 132-1.1(b) (2017) (emphasis added). An individual

taxpayer may request his own records under North Carolina General Statute § 105-

7 We also note that one of the issues Plaintiff argues on appeal as to the protective order arises from
documents the trial court determined were protected by attorney-client privilege. The trial court
reviewed these documents in camera prior to entering the protective order, but the documents are not
in our record on appeal. Therefore, we would be unable to review this issue even if we treated the
notice of appeal as covering the protective order.

 - 13 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

259, but an individual’s state income tax records are not “public records” as defined

by North Carolina General Statute § 132-1.1. Thus, Plaintiff’s request included both

“public records” and his own income tax records, which he as the taxpayer could

request under North Carolina General Statute § 105-259.

 Plaintiff’s arguments on appeal do not differentiate between the two distinct

types of information requested—his own personal tax records and communications

by and between NCDOR, members of the General Assembly, and Governor’s office—

but he notes in a footnote that although disclosure of tax information is prohibited as

a general rule, “denial of access to a public record is improper on the basis that the

public record contains nonpublic information, the responsibility being on the agency

to separate the nonpublic information from the public” under North Carolina General

Statute § 132-6(c). This is true, but there is no issue on appeal regarding Defendant’s

separation of “the nonpublic information from the public” within the public records

produced. Plaintiff overlooks the real distinctions between the different types of

records he requested and the different statutes governing the production of this

information, but Defendant has attempted to make this distinction clear from the

beginning of this dispute.

 On 9 June 2016, the day after Plaintiff’s initial request, Trevor Johnson,

Director of Public Affairs for NCDOR, informed Plaintiff he would address the portion

of the request as to communications such as emails, but the portion of his request

 - 14 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

regarding “actual taxpayer records” would be forwarded to the Taxpayer Assistance

Division. In August 2016, after Mr. Ethan Forrest, as counsel for WBTV, contacted

Defendant regarding the public records request, Defendant requested Mr. Forrest to

have Plaintiff execute a GEN-58 form, Power of Attorney and Declaration of

Representative. This power of attorney was necessary for Defendant to disclose

personal tax information of Plaintiff to Mr. Forrest or anyone other than Plaintiff

under North Carolina General Statute § 105-259. Mr. Forrest questioned the need

for the GEN-58 noting, “I am counsel for WBTV and Raycom Media, seeking records

under the Public Records Act pertaining to a WBTV employee. I am not resolving a

taxpayer dispute with your office.” However, Plaintiff executed the GEN-58 and

Defendant then responded to Mr. Forrest’s request. Thus, at its inception, there was

confusion as to whether Plaintiff’s request involved a “taxpayer dispute” or simply a

public records request. The record shows that at least until July 2016, Plaintiff was

seeking to resolve a taxpayer dispute with Defendant, as his brief acknowledges by

noting that “[b]y July 7, 2016, Oschner’s tax liability for 2011 had been resolved, but

his public records request had not.”8 In any event, the issues on appeal—except

8 At the hearing on 26 January 2018, the trial court reviewed the various tax years for which Defendant
had produced records of Plaintiff’s individual returns and sought to clarify which years Plaintiff
claimed he had filed in North Carolina but for which Defendant had not produced records. Plaintiff’s
counsel informed the trial court that he had not filed in 2011, as he had just graduated from Elon and
taken a job out of state, and he was not entirely certain at that time as to the exact years he had filed
in North Carolina. Defendant’s counsel again noted that Plaintiff’s “initial request intermingled public
records with tax information” and explained that the information regarding his income tax returns
could be disclosed to the taxpayer under North Carolina General Statute § 105-259, but it was not a
“public record” governed by the Public Records Act.

 - 15 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

perhaps as to metadata related to Plaintiff’s individual income tax returns—all arise

from his request under the Public Records Act, and we will address his arguments

accordingly. We therefore express no opinion as to Plaintiff’s individual taxpayer

dispute, if any, with Defendant or as to the production of individual “tax information”

under North Carolina General Statute § 105-259.

 V. Substantial Compliance with Memorandum of Understanding

 Plaintiff argues that “this Court Should Reject The Notion That, As A Matter

Of Law, A State Agency Complies With A Settlement Agreement Reached To Resolve

A Public Records Dispute By ‘Substantial Compliance.’” Plaintiff notes that the trial

court’s order denying his motion to enforce the MOU and granting Defendant’s

motion to enforce the MOU “finds that [NCDOR] has materially and substantially

complied with the MOU and, in turn, the N.C. Public Records Act.” (Alteration in

original.) Plaintiff argues that the sworn certifications by various officers that the

required searches were conducted and that no responsive documents were found as

to particular types of documents are not sufficient as a matter of law to show that

Defendant has actually complied with the MOU. Plaintiff contends these

certifications are not sufficient for the trial court to perform its required role of

judicial oversight regarding an agency’s production of public records.

 The final determination of possession or custody of the
 public records requested is not properly conducted by the
 state agency itself. The approach that the state agency has
 the burden of compliance, subject to judicial oversight, is

 - 16 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 entirely consistent with the policy rationale underpinning
 the Public Records Act, which strongly favors the release of
 public records to increase transparency in government.
 Judicial review of a state agency’s compliance with a
 request, prior to the categorical dismissal of this type of
 complaint, is critical to ensuring that, as noted above,
 public records and information remain the property of the
 people of North Carolina. Otherwise, the state agency
 would be permitted to police its own compliance with the
 Public Records Act, a practice not likely to promote these
 important policy goals.

State Employees Ass’n of N.C., Inc. v. N.C. Dep’t of State Treasurer, 364 N.C. 205, 214,

695 S.E.2d 91, 97 (2010).

 Defendant contends that the undisputed evidence shows it did search for text

messages, instant messages, and emails, and it described its search procedures in a

certified statement and two affidavits. Specifically, Defendant’s Public Affairs

Director met with the directors of each of NCDOR’s 24 departments and every

employee was instructed to search personal and work email and text accounts for

communications from the identified individuals. The directors of each department

then certified that the searches in their departments were completed and reported

the results of the searches. Only 2 of the 24 departments reported finding responsive

documents, and those documents were provided to Plaintiff, except for one personal

iPhone message ultimately determined not to be responsive because it did not contain

any of the search terms.

 - 17 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 Defendant argues that the MOU “should be construed under principles of

contract law.” See Penn Dixie Lines, Inc. v. Grannick, 238 N.C. 552, 556, 78 S.E.2d

410, 414 (1953) (“Compromise agreements are governed by the legal principles

applicable to contracts generally. As a consequence, a compromise agreement is

conclusive between the parties as to the matters compromised.”). Therefore,

Defendant contends Plaintiff must show a material or substantial breach of the MOU

to succeed on his motion for enforcement. See Supplee v. Miller-Motte Bus. Coll., Inc.,

239 N.C. App. 208, 220-21, 768 S.E.2d 582, 593 (2015) (“It is well established that in

order for a breach of contract to be actionable it must be a material breach, one that

substantially defeats the purpose of the agreement or goes to the very heart of the

agreement, or can be characterized as a substantial failure to perform.” (brackets and

quotations marks omitted) (quoting Long v. Long, 160 N.C. App. 664, 668, 588 S.E.2d

1, 4 (2003))).

 Plaintiff replies that the terms of the MOU do not change Defendant’s

obligations under the Public Records Act and its provisions should “be construed as

if the Act had been written into the settlement agreement.” Plaintiff contends that

Defendant’s argument that the MOU went beyond the requirements of the Public

Records Act is irrelevant, as Defendant agreed to the MOU. We do not entirely

disagree, but Plaintiff has failed to demonstrate any way in which the trial court

failed to consider Defendant’s obligations under the Public Records Act. The MOU

 - 18 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

did not lessen those obligations but simply further defined the scope of the searches

Plaintiff requested by setting out the ranges of dates and persons to be searched.

 Plaintiff does not contend that the material facts as summarized in the trial

court’s order are disputed but contends that as a matter of law, Defendant has not

fully complied with the MOU by providing sworn statements as to its searches for

records. The trial court’s order summarizes the facts as follows:

 {6} The basis of Ochsner’s Motion is that the
 Department failed to produce certain documents (e.g., text
 messages, instant messaging logs, etc.) per the terms of the
 MOU.

 {7} The Motion was supported by an affidavit
 from Ochsner, in which he alleged that “he has neither
 received documents responsive to the following MOU items
 nor any information upon which to make a determination
 of [the Department’s] performance of the following items:”

 a. Items 1(e)(i) - emails from personal email
 accounts;

 b. Item 1(e)(ii) - text messages set[sic] or
 received from NCDOR issued phones;

 c. Item 1(e)(iii) - search of text messages sent or
 received from personal phones;

 d. Item 1(e)(iv) - search for any and all logs
 pertaining to instant messages;

 e. Item 1(e)(v) - any and all other forms of
 written communication;

 f. Item 2(c) - the same information
 contemplated in items 1(e)(i)-(v); and

 - 19 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 g. Item 4(c) - the entire file (including metadata)
 and any and all documents related to the tax
 account of Nicholas A Oschner.

See Affidavit of Nicholas A Ochsner (“Ochsner Affidavit”),
p. 4 at ¶ 18.

 {8} The Court disagrees and, for the reasons
discussed in Section III, finds that the Department has
materially and substantially complied with the MOU and,
in turn, with the N.C. Public Records Act.

 {9} Accordingly, Ochsner’s Motion is DENIED.

 II. MOOTNESS

 {10} The Department, like Ochsner, filed a Motion
to Enforce Mediated Settlement Agreement. It argued that
the MOU “resolved the dispute in this civil action” and the
Court should “dismiss [Ochsner’s] outstanding claims
given the Department's performance of all of its obligations
thereunder.” Defendant’s Motion to Enforce Mediated
Settlement Agreement, pp. 1-2.

 {11} As explained below, the Court agrees that
dismissal is appropriate given that the relief sought by
Ochsner has been granted, and this case is therefore moot.

 A.

 SUMMARY OF MATERIAL FACTS

 {12} Ochsner submitted a request for public
records to the Department dated 8 June 2016 (“June 2016
Request”).

 {13} In December 2016, Ochsner commenced this
civil action in Wake County Superior Court seeking an
order: (i) declaring that the records requested by Ochsner

 - 20 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 in the June 2016 Request were “public records” and (ii)
 compelling the Department, pursuant to General Statute
 132-9(a) “to make them available for inspection and
 copying.” Complaint and Motion for Order to Show Cause
 (“Complaint”), p. 8.

 {14} The Court, following commencement of the
 action, ordered the parties to conduct a mediated
 settlement conference. The parties’ mediation resulted in
 the execution of the MOU, which, per its terms,
 “memorialize[d] the matters with regard to each item from
 [the June 2016 Request].” MOU, p. 1.

 {15} The four (4) items in the MOD directly
 correspond to the four (4) categories of documents sought
 in the June 2016 request. These documents can be
 generally described as follows:

 a. Written communications between the
 Department and certain individuals with
 North Carolina General Assembly or otherwise
 associated therewith;

 b. Written communications between the
 Department and certain individuals with the
 Office of the Governor;

 c. Certain notices of unpaid taxes and collection
 and other letters regarding unpaid taxed
 issued by the Department; and

 d. The entire file and all documents related to the
 tax account of Mr. Ochsner.9

 See MOU and Complaint, Ex. A.

 {16} The Department produced documents to
 Ochsner following execution of the MOU and, on 31 May

9As noted above, Plaintiff’s “tax information” as defined by North Carolina General Statute § 105-
259(a)(2) is not a public record, but this portion of the order is not in dispute.

 - 21 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 2017, informed Ochsner by letter that it had fully satisfied
 all of its obligations under the MOU.

 {17} The Department has provided numerous
 sworn statements from its employees during the course of
 this action. These statements include: (a) Certified
 Statement of Schorr Johnson dated 20 June 2017
 (“Johnson Certified Statement”); (b) Certified Statement of
 David Roseberry dated 19 April 2017 (“Roseberry Certified
 Statement”); (c) Affidavit of Daniel Garner dated 16
 January 2018 (“Garner Affidavit”); (d) Affidavit of Schorr
 Johnson dated 26 February 2018 (“Johnson Affidavit”); and
 (e) Affidavit of David Roseberry dated 2 March 2018
 (“Roseberry Affidavit”).

(Alterations in original.) The trial court then noted several cases addressing when a

case may be dismissed as moot:

 {23} Here, Ochsner seeks relief under the North
 Carolina Public Records Act and, specifically, General
 Statute 132-9. Subsection (a) of this statute provides, in
 part:
 Any person who is denied access to public
 records for purposes of inspection and
 examination, or who is denied copies of public
 records; may apply to the appropriate division
 of the General Court of Justice for an order
 compelling disclosure or copying, and the
 court shall have jurisdiction to issue such
 order if the person has complied with G.S. 7A
 38.3E.

 {24} Accordingly, the recovery provided for by this
 statute, and which Ochsner sought in commencing this
 action, is the opportunity to inspect those public records
 requested from the Department in the June 2016 Request,
 as modified by the parties’ MOU. Ochsner has been given
 the opportunity to obtain the requested records at issue in
 this civil action.

 - 22 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 {25} Both parties’ acknowledge that the MOU
limited the scope of the June 2016 Request. See e.g.
Ochsner Affidavit, p. 2 at ¶ 6. A mediated settlement
agreement, such as the MOU, “is . . . the document used to
memorialize the substantive terms reached between the
parties during the mediated settlement conference.”
Barnes v. Hendrick Auto., 2014 N.C. App. LEXIS 73, at *9
(N.C. Ct. App. Jan. 21, 2014). Thus, the MOU reflected the
parties’ mutual agreement as to what would satisfactorily
complete the Department’s obligations with respect to the
June 2016 Request.

 {26} The Department has produced documents in
response to each section of the MOU. This included the over
[sic] 13,000 pages of documents of written communications
provided pursuant to Sections 1 and 2 of the MOU,. the
certified statement from a Departmental official
addressing the Department’s issuance of certain notices
provided pursuant to Section 3 of the MOU, and the
documents in Ochsner’s tax file as delineated in Section 4
of the MOU, some of which were provided to Ochsner prior
to the commencement of the civil action.

 {27} Ochsner complains that he did not receive
certain documents. See Section II, , 7 supra. However, the
Department in sworn statements from its Public Affairs
Director, the individual with oversight of its public records
requests, averred that the Department conducted its
search for responsive records in accord with the MOU and
explains, in reasonable detail, the scope and method of the
Department’s search, including the search terms used and
locations searched. See Johnson Certified Statement, pp.1-
2; Johnson Affidavit, pp. 1-4. Indeed, the Department
further explains in these statements that its search
included all Departmental employees, that it was for
written communications (which included text messages),
and that it encompassed all locations likely to contain the
requested communications (which included personal and
official devices, personal e-mail accounts). See Johnson

 - 23 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Affidavit, pp. 1-4.

 {28} The Department, in its affidavits and other
sworn statements, also explains why some documents were
not located. For example, Ochsner complains the
Department failed to produce instant messaging logs and
text messages on Department issued phones. See Section
II, ¶ 7 supra. However, the Department’s Chief
Information Officer explained that, during the relevant
period, Departmental-issued phones “did not have text
messaging capability enabled or available,” and “there
were no instant messaging systems on Department-issued
computers.” See Roseberry Affidavit. pp. 1-2.

 {29} Courts, in context of reviewing public records
disputes, have held that similar affidavits from
governmental entities “are accorded a presumption of good
faith” and, when unrebutted, “can prove that an agency
satisfied” its obligations under a public records law. See
e.g., Powell v IRS, 2017 U.S. Dist. LEXIS 198605, at *14
(D.D.C. Dec. 4, 2017) (internal citations omitted).

 {30} Here, there are no positive indications of
overlooked materials by the Department that raise doubt
about the adequacy of the Department’s search. Ochsner’s
claims that other responsive documents and information
exists therefore amount to nothing more than speculation.
As explained by the court in Powell when finding that the
IRS fulfilled its obligations under FOIA, the good faith
presumption afforded to such declarations cannot be
rebutted “by purely speculative claims about the existence
and discoverability of other documents.” Id.

 {31} “It is not the function of this Court to consider
and rule on imagined controversies.” Sbella v. Moon, 125
N.C. App. 607, 610, 481 S.E.2d 363, 365 (1997). Thus, the
Court, for the reasons discussed above, finds that Ochsner
has been granted the relief he sought by initiating this
action under General Statute 132-9 and the issue upon
which he sought a determination is moot. The Court

 - 24 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 therefore dismisses this civil action.

(First alteration in original). (Footnotes omitted.)

 The Public Records Act does not require an agency to create or compile records

responsive to a request if those records do not exist; the agency must produce only

the records which already exist. N.C. Gen. Stat. § 132-6.2(e) (“Nothing in this section

shall be construed to require a public agency to respond to a request for a copy of a

public record by creating or compiling a record that does not exist. If a public agency,

as a service to the requester, voluntarily elects to create or compile a record, it may

negotiate a reasonable charge for the service with the requester. Nothing in this

section shall be construed to require a public agency to put into electronic medium a

record that is not kept in electronic medium.”). The MOU went beyond the

requirements of the Public Records Act because it required Defendant to create

records. For example, Defendant was required to create a list of staff members of six

specific members of the House of Representatives and one Senator during the

relevant time. The MOU required Defendant to search for certain records and to

produce any records responsive to the request. As the trial court noted, both parties

agreed that if the terms of the MOU were met, this would satisfy Plaintiff’s request.

The MOU did not set forth requirements as to the exact methodology of the searches

or who would conduct the searches. This type of information would also go beyond

that required by the Public Records Act, since it would require the agency to create

 - 25 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

records regarding the search. As the trial court noted during the hearing, Plaintiff

could have insisted that the MOU include specific requirements regarding the

methodology, dates, and persons conducting the searches, but the MOU did not

include this requirement.

 Although Plaintiff argues that “material” and “substantial” compliance with a

settlement agreement regarding public records is contrary to the intent of the Public

Records Act, he has cited no authority, and we find none, which would require some

higher level of compliance with a settlement agreement in this context than in any

other. See Supplee, 239 N.C. App. at 220-21, 768 S.E.2d at 593. Although no case in

North Carolina has addressed the use of sworn statements by agencies to show good

faith efforts to search for requested documents, we find many federal cases under the

Freedom of Information Act which have addressed this issue. Where plaintiffs have

sought public records and the agency determines those records do not exist, the

agency may show “the adequacy of its search by submitting reasonably detailed,

nonconclusory affidavits describing its efforts.” Baker & Hostetler LLP v. U.S. Dep’t

of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006).

 To meet its burden to show that no genuine issue of
 material fact exists, with the facts viewed in the light most
 favorable to the requester, the agency must demonstrate
 that it has conducted a “search reasonably calculated to
 uncover all relevant documents.” Further, the issue to be
 resolved is not whether there might exist any other
 documents possibly responsive to the request, but rather
 whether the search for those documents was adequate. The

 - 26 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 adequacy of the search, in turn, is judged by a standard of
 reasonableness and depends, not surprisingly, upon the
 facts of each case. In demonstrating the adequacy of the
 search, the agency may rely upon reasonably detailed,
 nonconclusory affidavits submitted in good faith. With the
 guiding principle of reasonableness in mind, we turn to
 each of appellant’s contentions.

Weisberg v. U.S. Dep’t of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citations

omitted).

 Here, the trial court determined that Defendant’s sworn declarations were

sufficient to show that it conducted a reasonable search:

 However, the Department in sworn statements from its
 Public Affairs Director, the individual with oversight of its
 public records requests, averred that the Department
 conducted its search for responsive records in accord with
 the MOU and explains, in reasonable detail, the scope and
 method of the Department’s search, including the search
 terms used and locations searched.

The MOU itself did not set any higher standard for Defendant’s search efforts or

certification of those efforts than would be required under the Public Records Act.

 Other than the failure to produce records which Defendant has certified do not

exist or at least have not been found despite its reasonable efforts in searching,

Plaintiff has failed to identify any other manner Defendant did not comply with the

MOU. Plaintiff’s primary argument is based upon his disbelief of Defendant’s

certifications that the directors and employees within NCDOR completed the

required searches, based at least in part upon their not finding any text messages

 - 27 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

responsive to his request. We appreciate the difficulty presented to both Plaintiff and

Defendant. The law generally does not require a party to prove a negative, but here,

both sides are placed in this position. Defendant has certified that certain personal

text messages or emails do not exist, and Plaintiff asks Defendant to prove the

negative: that certain personal text messages or emails do not exist. If they do not

exist, as Defendant has certified under oath, Defendant cannot produce anything

more to prove their nonexistence. On the other side, Plaintiff contends that

Defendant did not do a full, good faith search of all of the information in the

possession or control of Defendant’s employees or other individuals, as the request

may apply to personal email accounts, computers, or phones. Since he cannot have

direct access to those sources to ensure that every person’s accounts and information

have in fact been properly searched, Plaintiff is attempting to prove that Defendant

did not do what it claims it did. As Plaintiff argued to the trial court:

 With the affidavit of Ochsner here, in paragraph 18 where
 he says I’ve not been given any documents or any basis to
 know whether these things have been performed and we’re
 trying to prove a negative here. We’re trying to prove the
 non-happening, okay, and this affidavit based on personal
 knowledge pursuant to the requirements of 56(e) is
 sufficient to meet the requirement that his burden of proof,
 this nonperformance, has not occurred.

 The trial court asked Plaintiff’s counsel, considering the responses in context

and the certifications that Defendant had searched all employees for the various

types of documents and none were found in some areas, “how would we ever … know”

 - 28 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

if the searches were or were not correctly done as to records Defendant claims do not

exist? Plaintiff’s counsel responded, “I could put somebody under oath and ask them.”

To which the trial court stated, “This is under oath.”10

 Plaintiff argues he was denied the ability to prove Defendant’s lack of

compliance by the trial court’s protective order as to his second set of discovery, but

as noted above we do not have jurisdiction to review the protective order. But we

note that Plaintiff did conduct discovery before entry of the MOU, and Defendant

responded to Plaintiff’s first interrogatories and request for production. Plaintiff did

not move to compel further production under the first set of discovery or allege

Defendant’s responses to the first set of discovery were incomplete. In addition, after

the colloquy noted above, at the hearing on 26 January 2018, the trial court had a

conference with counsel for both parties and adjourned the hearing to allow Plaintiff

the opportunity to present the questions “plaintiff would like answered in order to

determine whether NCDOR conducted a search per the terms of the MOU.” Plaintiff

asked Defendant, with questions tailored to the category of document, for the

following information: who conducted the search; when did the search occur; what

methodology was used to ensure each account or phone was searched; did the search

yield anything responsive to Plaintiff’s request; and is Defendant claiming any

exemption or exception to disclosure of any item? In response, on 9 March 2018,

10 The trial court was referring to the sworn and notarized affidavits submitted by Defendant.

 - 29 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Defendant’s counsel sent a letter to the trial court and Plaintiff with answers to each

question, along with sworn affidavits from the Director of Public Affairs for NCDOR

and the Assistant Secretary and Chief Information officer for NCDOR. Thus, the

trial court, in its role of providing judicial oversight, addressed Plaintiff’s concerns

regarding how Defendant conducted its searches and Defendant provided the

explanation of its searches to the trial court and Plaintiff. Plaintiff’s argument on

appeal remains the same: he disagrees that Defendant actually conducted all of the

required searches, despite the multiple sworn certifications the searches were done

and the over 13,000 pages of records actually produced. But based upon the record

before us, the trial court properly determined that Defendant substantially and

materially complied with the MOU, and Plaintiff has made no showing of any

reasonable basis to doubt Defendant’s certifications and responses.

 Our Supreme Court has addressed a case in which the plaintiff showed that

the defendant may have failed to produce responsive records despite its production of

hundreds of pages of documents and its claim that no additional documents existed.

State Employees Ass’n of N.C., Inc. v. N.C. Dep’t of State Treasurer, 364 N.C. 205, 695

S.E.2d 91 (2010). In State Employees Association of North Carolina, Inc. v. North

Carolina Department of State Treasurer, our Supreme Court reversed a trial court’s

order dismissing the plaintiff’s claim under North Carolina General Statute § 1A-1,

Rule 12(b)(6) holding that the plaintiff’s complaint was sufficient to state a claim

 - 30 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

under the Public Records Act because plaintiff had shown a “reasonable inference”

that some responsive documents had not been provided. Id. at 212, 695 S.E.2d at 96.

Plaintiff had requested certain information from defendant, and defendant produced

700 pages of documents. Id. at 207, 695 S.E.2d at 93. After the initial response,

plaintiff sent several letters noting deficiencies and requesting that all of the

responsive records be produced. Id. at 207-08, 695 S.E.2d at 93-94. Ultimately, the

plaintiff filed its lawsuit under the Public Records Act. Id. at 209, 695. S.E.2d at 209.

Our Supreme Court noted that based upon the documents produced, plaintiff had

identified

 specific reasons why plaintiff believed that
 additional public records implicated by its initial requests
 existed, but had not been provided. For example, in
 regards to its 1 March 2007 request, plaintiff stated, inter
 alia:
 [I]t is clear that not all documents
 containing correspondence from Forbes has
 been provided. The January 19, 2007, 3:43
 p.m. e-mail from Kai Falkenberg to Ms. Lang
 refers to an attached letter “a copy of which—
 with enclosures—has also been sent to you by
 fax.” You have provided neither that letter
 nor the enclosures. Moreover, Neil
 Weinberg’s message on the same date refers
 to a letter faxed to Ms. Lang from Forbes’
 attorney. If this is not the same letter referred
 to by Ms. Falkenberg, then you have not
 provided a copy of it.
 In addition, except for some responses
 that are attached to the Forbes e-mails, you
 have not provided all responses from Ms.
 Lang to Forbes. For example, attached to the

 - 31 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

 February 14, 2007, e-mail message from
 Jason Storbakken is an e-mail from Ms. Lang
 stating: “Please see answers inserted in your
 original e-mail below.” However, you have not
 produced the e-mail that contains Ms. Lang’s
 answers. Moreover, attached to Jason
 Storbakken’s message of February 14, 2007,
 6:16 p.m., is a message stating: “On 2/14/07
 PM, ‘Sara Lang’ . . . wrote:” but the text of Ms.
 Lang’s message is omitted. It is difficult for
 me to draw any conclusion except that Ms.
 Lang’s message has been intentionally
 deleted from the document.
 Finally, based on the size of the fee paid
 to the retained law firm and, thus, the
 number of hours that firm must have worked
 on this issue, it would appear that there must
 have been electronic or written
 correspondence between your office and that
 law firm regarding the Forbes public
 information request. However, no copies of
 any such correspondence have been produced.
 Thus, plaintiff’s allegations that additional public
 records exist that have not yet been disclosed are based on
 reasonable inferences.

Id. at 211-12, 695 S.E.2d at 96 (alterations in original) (emphasis added).

 Here, Defendant produced over 13,000 pages of information to Plaintiff, but

Plaintiff has not identified anything from those documents which might lead to a

“reasonable inference” that other responsive documents exist. Plaintiff has identified

no “specific reasons why plaintiff believed that additional public records implicated

by its initial requests existed, but had not been provided.” Id. As to the documents

Defendant avers do not exist, Defendant provided the portion of its Security Policy

 - 32 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Manual regarding “Messaging Systems” and its Email Retention Policy. The Security

Policy provides that employees are “expressly prohibited” from using “alternate

messaging systems for the purpose of conducting Agency business.” If Defendant’s

employees complied with its policy, searches of their personal email, text message,

or other accounts or devices would not produce any responsive documents. Emails

sent or received on employees’ official accounts were captured by the department’s

“Email Repository” and stored so they would not be deleted. Emails stored in the

repository are searchable, so Defendant’s searches should have discovered any

responsive emails sent or received by employees, even if an employee attempted to

delete an email. In addition, since most of the information produced by Defendant is

not in our record, we have no means of reviewing the trial court’s analysis of its

completeness.

 Plaintiff argues that “[t]he practical effect” of the trial court’s ruling that

Defendant had materially and substantially complied with the MOU and dismissing

the action as moot “is to permit NCDOR to police itself and declare compliance with

the MOU and Public Records Act, contrary to its spirit and intent.” We disagree with

Plaintiff’s claim that the trial court allowed Defendant to “police itself.” The trial

court vigorously exercised its judicial oversight function. Almost immediately after

the action was filed, it entered a litigation hold order and mediation order sua sponte.

It held status conferences to oversee the ongoing production of documents. Even after

 - 33 -
 OCHSNER V. N.C. DEP’T OF REVENUE

 Opinion of the Court

Defendant had produced thousands of pages of records and many certifications, the

trial court still required Defendant to respond to Plaintiff’s detailed questions

regarding the search methodology and did not enter the order dismissing the action

until all of the questions had been answered. This argument is without merit.

 VI. Conclusion

 We therefore affirm the trial court’s order.

 AFFIRMED.

 Judges DIETZ and HAMPSON concur.

 - 34 -