IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-154

Filed 12 September 2023

Mecklenburg County, No. 21-CVS-10398

GRAY MEDIA GROUP, INC.,

d/b/a WBTV, Plaintiff,

v.

CITY OF CHARLOTTE, through the CITY COUNCIL, Defendant.

Appeal by Plaintiff from Order entered 11 October 2022 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 August 2023.

> *Flannery | Georgalis, LLC, by Elizabeth F. Greene, and Ballard Spahr LLP, by Lauren P. Russell and Kaitlin M. Gurney (pro hac vice), for Plaintiff-Appellant.*
>
> *Parker Poe Adams & Bernstein LLP, by Daniel E. Peterson, for Defendant-Appellee.*
>
> *Stevens Martin Vaughn & Tadych, PLLC, by Elizabeth J. Soja and Michael J. Tadych, for Amici Curiae.*

RIGGS, Judge.

"Government agencies and officials exist for the benefit of the people, and 'an informed citizenry [is] vital to the functioning of a democratic society.'" *State Employees Ass'n of N.C. v. N.C. Dep't of State Treasurer*, 364 N.C. 205, 210, 695 S.E.2d 91, 95 (2010) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 57 L.

Ed. 2d 159, 178 (1978)). Fundamentally, "public records and public information compiled by the agencies of North Carolina Government, or its subdivisions are *the property of the people.*" N.C. Gen. Stat. § 132-1(b) (2021) (emphasis added). For that reason, the North Carolina General Assembly provided a means for fostering transparency and accountability in government through the Public Records Act, which provides broad access to public records. *State Employees Ass'n of N.C.*, 364 N.C. at 211, 695 S.E.2d at 95. The Act is intended to be liberally construed to ensure that governmental records be open and made available to the public, subject only to a few limited exceptions. *DTH Media Corp. v. Folt*, 374 N.C. 292, 300, 841 S.E.2d 251, 257–58 (2020)

In this appeal, Gray Media, LLC ("Gray Media") asks this Court to consider whether records held by a third party are subject to the Public Records Act. The trial court declared the issue moot and granted summary judgment to Defendant, City of Charlotte ("the City"), because the City voluntarily produced the documents. However, Gray Media requests that this Court provide declaratory relief related to this public records request made pursuant to the Public Records Act, N.C. Gen. Stat. §§ 132, *et seq.* (2021). Additionally, Gray Media appeals the trial court's denial of attorneys' fees associated with its Public Records request.

Upon review, we hold that Gray Media's request for declaratory relief is not moot, and the requested records are public records as defined by N.C. Gen. Stat. § 132-1(a). Further, because we hold that the litigation compelled the release of the

documents, Gray Media is entitled to reasonable attorneys' fees. Therefore, we remand for summary judgment in favor of Gray Media and additional factfinding to determine the fee award pursuant to N.C. Gen. Stat. § 132-9(c).

## I. FACTS & PROCEDURAL HISTORY

In April of 2020, the City executed a one-year contract ("Contract") with Ernst and Young ("EY") to advance more streamlined and effective local government operations. The contract included two (2) one-year renewal options to extend until March of 2023; the City exercised at least one of these renewal options and extended the contract to March 2022. The contract provided that the City would "have exclusive ownership of all reports, documents, designs, ideas, materials, concepts, plans, creative works, software, data, programming code, and other work product developed for or provided to the City in connection with this Contract, and all patent rights, copyrights, trade secret rights and other intellectual property rights relating thereto (collectively the 'Intellectual Property')." In the same paragraph of the contract, EY retained its ownership rights in "Preexisting IP," which it defined as "proprietary data, methodologies, processes, know-how, and trade services that [EY] owns in performing services under this Contract[.]"

The Contract also gave the City exclusive ownership of "Contract Data" defined as: "(a) all data produced or generated under this Contract for the benefit of the City and its customers; and (b) all data provided by, accessed through, or processed for the City under this Contract." The Contract gave the City access to Contract data

through language requiring EY to "promptly provide the Contract data to the City in machine readable format upon the City's request at any time while the contract is in effect or within three years from when the contract terminates." The Contract states that work product, excluding confidential information of EY, shall be treated as public records under North Carolina law. Pursuant to the terms of the contract, EY agreed to treat Contract Data as Confidential Information and "not reproduce, copy, duplicate, disclose, or use the Contract Data in any manner except as authorized by the City in writing or expressly permitted by this Contract."

On 24 November 2020, the City and EY signed a statement of work ("SOW") under the Contract, which included having EY develop and deploy a survey focused on transformative leadership and high-performing council topics for the City Council members. In December 2020, EY deployed this survey by sending an email to each City Council member's work email address with a unique hyperlink to access and fill out the survey.

On 2 March 2021, WBTV reporter David Hodges, an employee of Gray Media, requested and received the contract and SOW as part of a public information request made pursuant to N.C. Gen. Stat. § 132-6. Mr. Hodges followed up on the same day, requesting the EY survey form and City Council member responses. The City immediately denied his request via email saying that "[w]e are not in possession of those surveys and EY used those surveys solely for the purpose of developing their recommendations." The City clarified its stance on 9 March 2021 in a letter stating

the City Attorney's Office had "determined that documents that are solely in EY's possession are not subject to the Public Records Law." During April and May, the parties exchanged correspondence on the topic of whether the survey and responses were public records subject to disclosure. On 1 June 2021, the City sent Gray Media the final report that EY developed based in part on the survey information; however, the final report did not include the survey or survey responses.

Gray Media filed a complaint and petition for writ of mandamus on 29 June 2021. The City responded with a motion to dismiss, motion to strike, and request for a protective order on 27 August 2021. After a hearing on the issues, the trial court entered an order on 12 November 2021 granted the City's motion to dismiss in part and denied the motion in part; the trial court also directed Gray Media to amend its complaint in accordance with the order.

Gray Media filed an amended complaint on 23 November 2021 requesting relief declaring the documents were public records and a writ of mandamus requiring the City to comply with the Public Record Act. The City responded to the amended complaint on 24 January 2022 arguing *inter alia* that the requested records were not public records. As part of the discovery process following the amendment of the complaint, the City served EY with a subpoena *duces tecum* on 27 May 2022 requesting that EY produce the survey questions and responses no later than 3 June 2022. The City extended this deadline to 10 June 2022 in exchange for EY's agreement to accept service by email. Nine working days later, EY timely produced

the requested material to the City on 10 June 2022; the City turned the survey

questions and responses over to Gray Media on the same day. During oral argument

on appeal, the City confirmed that this subpoena *duces tecum* was the first time the

City requested the survey and responses from EY.

Prior to the production of the requested survey and responses, Gray Media filed

a motion for summary judgment in April 2022. After production of the survey and

responses, the City filed a motion for summary judgment in July 2022.

The trial court held a hearing on 18 August 2022 on the motions for summary

judgment and entered an order on 11 October 2022 granting the City's motion for

summary judgment and denying Gray Media's motion for summary judgment. The

trial court found that:

> (i) there is no genuine issue of material fact precluding
> entry of summary judgment; (ii) no genuine present
> controversy exists between the parties; (iii) as the
> Defendant has produced the records, Plaintiff's request for
> declaratory and injunctive relief is moot; (iv) there is no
> applicable exception to the mootness doctrine because
> while there is reasonable possibility that the Plaintiff may
> be subjected to the same action again, such action is
> capable of being fully litigated at that time.

Further, the trial court denied Gray Media's motion for attorneys' fees. Gray Media

timely appealed the order on 7 November 2022.

## II.    ANALYSIS

### A. The Issue Is Not Moot

The trial court found that because the City had produced the requested records,

the issue was moot and granted summary judgment for the City. On appeal Gray Media argues its request for a declaratory judgment that the requested documents are public records is not moot and is, in fact, "ripe for judicial review." In the alternative, Gray Media argues, even if the issue is moot, the issue is capable of repetition but evading review and, therefore, an exception to the doctrine of mootness. The City argues that this request for declaratory judgment is moot because, if rendered, such judgment could not have any practical effect on the existing controversy. We hold that the issue is not moot.

### 1. *Standard of Review*

While the trial court granted summary judgment based upon a finding of mootness, the North Carolina Supreme Court has held that "the proper procedure for a court to take upon a determination that a case has become moot is dismissal of the action rather than entry of summary judgment." *Roberts v. Madison County Realtors Assn.,* 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996). The issue of whether a trial court properly dismissed a case as moot is reviewed *de novo. Alexander v. N.C. State Bd. of Elections*, 281 N.C. App. 495, 499, 869 S.E.2d 765, 769 (2022) *appeal dismissed, review denied*, ___ N.C. ___, 880 S.E.2d 689-90 (2022). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citation omitted).

### 2. *Plaintiff's Request for Declaratory Judgment Is Not Moot*

Actions filed under the Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253–267 (2021), are subject to traditional mootness analysis. *Citizens Addressing Reassignment & Educ., Inc. v. Wake Cty. Bd. of Educ.*, 182 N.C. App. 241, 246, 641 S.E.2d 824, 827 (2007). This is the case because "jurisdiction does not extend to questions that are altogether moot." *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 554, 680 S.E.2d 738, 743 (2009) (quoting *Pearson v. Martin*, 319 N.C. 449, 451, 355 S.E.2d 496, 498 (1987). Mootness arises "[w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." *News and Observer Publishing Co. v. Coble*, 128 N.C. App. 307, 309–10, 494 S.E.2d 784, 786 *aff'd*, 349 N.C. 350, 507 S.E.2d 272 (1998) (quoting *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978)). Understood another way, a case is considered moot when a "determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Lange v. Lange*, 357 N.C. 645, 647, 588 S.E.2d 877, 879 (2003) (internal citation omitted).

The Public Records Act specifically authorizes requesting parties that have been denied access to records to initiate judicial action, including seeking declaratory judgment. *Virmani v. Presbyterian Health Services Corp.,* 350 N.C. 449, 461, 515 S.E.2d 675, 684 (1999) (noting a declaratory judgment action represents one of several legal methods by which questions of public access to courts and their records are most frequently and successfully raised). A declaratory judgment should be

granted when it will: (1) "serve a useful purpose in clarifying and settling the legal relations at issue, and (2) [] terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Augur v. Augur*, 356 N.C. 582, 588, 573 S.E.2d 125, 130 (2002). Declaratory judgments should not be made "in the abstract, i.e. without definite concrete application to a particular state of facts which the court can by the declaration control and relieve and thereby settle the controversy." *Id.* The purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Insurance Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964) (internal citations omitted). Under the Declaratory Judgment Act, any person whose rights are affected by a statute may request a determination of rights arising out of the statute, and our trial courts have the jurisdiction to issue a declaratory judgment to define rights, status, and other legal relations, even if other relief is or could be claimed. N.C. Gen. Stat. § 1-253. *See Insurance Co.*, 261 N.C. at 287, 134 S.E.2d at 656-57 (recognizing that trial courts have jurisdiction to render a declaratory judgment when there is a genuine controversy as to legal rights and liabilities related to, *inter alia,* contracts, and statutes). The North Carolina Supreme Court has emphasized that the Declaratory Judgment Act should be liberally construed and administered. *Id* at 287, 134 S.E.2d at 657.

Here, Gray Media asked the trial court to declare Gray Media's right, and by extension, the public's right, to access the survey and survey responses. Specifically,

Gray Media asked the trial court to confirm that the documents are public records as defined in N.C. Gen. Stat § 132-1(a) even if the documents are solely in the possession of a third party. The City only turned over the requested documents to Gray Media after Gray Media filed for summary judgment but before the summary judgment hearing, without conceding that the records were public records when they were in the possession of EY. Indeed, the City still vigorously contends that the requested documents were not public records when in EY's physical possession.

Because the trial court did not reach the merits of the declaratory judgment action and thus did not afford the precise relief request by Gray Media—that the Court declare that the records were public records even when solely in the physical possession of EY, the issue is not moot. Where there is still outstanding requested relief that could alter the legal relationship between the parties and have a practical effect on the dispute between the parties, the case is not moot. *Cf. In re Hamilton*, 220 N.C. App. 350, 353, 725 S.E.2d 393, 396 (2012) ("Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.")

One need not look further than the terms of the Contract to identify the practical import of this declaration of rights under the Public Records Act. The disclosed survey and the responses are a small piece in a much larger contract

between the City and EY; the surveys represented only $46,500 of a multi-year Contract between the City and EY with a total value not to exceed $400,000. It is reasonable to anticipate that EY gathered additional information under this Contract that was created by City Officials utilizing hyperlinks or other cloud technology that remains solely in EY's physical possession. A declaratory judgment on the merits has the practical implication of defining the public's right to access records created by a public official but possessed solely by a third party (and this specific third party, EY, given how much work may still be done under the Contract) and would remove any uncertainty on that issue. *Lide v. Mears*, 231 N.C. 111, 117–18, 56 S.E.2d 404, 409 (1949) ("The [Declaratory Judgment] Act recognizes the need of society 'for officially stabilizing legal relations by adjudicating disputes before they have ripened into violence and destruction of the *status quo*.'"). Therefore, we hold that this issue is not moot.

### 3. *Applicable exception to the doctrine of mootness*

While we hold that the issue in this matter is not moot, we also note, in the alternative, that we would reach the merits of this case because of an exception to the doctrine of mootness. Although the general rule is that an appeal presenting a question that has become moot will be dismissed, a court may consider moot cases falling within one of several limited exceptions to the doctrine. *Anderson v. N.C. State*

*Bd. of Elections*, 248 N.C. App. 1, 7, 788 S.E.2d 179, 184 (2016).[1]  One such exception is that this Court may consider otherwise-moot issues capable of repetition but evading review.  *In re Jackson*, 84 N.C. App. 167, 171, 352 S.E.2d 449, 452 (1987) (citing *Moore v. Ogilvie*, 394 U.S. 814, 816, 23 L.Ed.2d 1, 4 (1969)).  For an issue to be capable of repetition yet evading review, the challenged action must (1) have a duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the complaining party would be subject to the same action again.  *Boney Publishers, Inc. v. Burlington City Council*, 151 N.C. App. 651, 654, 566 S.E.2d 701, 703-04 (2002) (citing *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989)).  The controversy in this matter satisfies both elements for an issue to be capable of repetition yet evading review.

First, there is a reasonable likelihood that these same parties will find themselves in this same dispute in the future.  The trial court acknowledged that there is a reasonable possibility that the Plaintiff may be subjected to the same action again if it requested similar information.  The City conceded at oral argument that this is a scenario that could occur in the future.  Additionally, with the ever-increasing

---

[1] *See e.g.*, *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 286, 293, 517 S.E.2d 401, 405 (1999) (noting that voluntary cessation of a challenged action does not deprive a court of jurisdiction to determine the legality of the practice); *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam) (concerning the public duty exception); *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989) (explaining "capable of repetition, yet evading review" exception); *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (recognizing exception where there exists "collateral legal consequences of an adverse nature"); *Simeon v. Hardin*, 339 N.C. 358, 370, 451 S.E.2d 858, 867 (1994) (noting appeal was reviewable where the claims of unnamed class members are not mooted by the termination of the class representative's claim).

role that online data storage plays in our modern world, more governmental agencies are storing data and records using cloud-based technology, often to aid in compliance with public records laws by allowing easier access to the public. D'Onfro, Danielle, *The New Bailments*, 97 Wash. L. Rev. 97, 99 (2022); David A. Lawrence, *Public Records Law* 94-5 (2nd ed. 2009). This Court has held that where there is a "reasonable likelihood that defendants . . . could repeat the conduct, which is at issue here, subjecting the plaintiff to the same action," this Court should consider the issues raised on appeal as an exception to the mootness doctrine. *Boney Publishers,* 151 N.C. App. at 654, 566 S.E.2d at 705. We note, though, that for an issue to be capable of repetition, it is not necessary that a future dispute involve the exact same parties and circumstances. *See In re Jackson*, 84 N.C. App. at 171, 352 S.E.2d at 452 (explaining the issue was capable of repetition yet evading review because it is not improbable that the Board of Education or other local school boards will be repeatedly subject to similar orders). Here, given the City's position that the Public Records Act does not apply to documents in the physical custody of a third party and Gray Media's interest in timely news coverage of city government activity, it is likely that these parties will end up in our courts again.

Second, the challenged action has a duration too short to be fully litigated prior to cessation or expiration. The trial court stated, and the City argues on appeal, that the statutory procedure for expedited hearings allows for timely review. N.C. Gen. Stat. § 132-9. However, the City omits the fact that in future challenges, it can

exercise its ownership rights, demand production from the third party, and turn the documents over to the requesting party long after the initial request but before the hearing date, thereby frustrating the intent of the Public Record Act, while still evading review. *In re Jackson*, 84 N.C. App. at 171, 352 S.E.2d at 452 (holding that a case involving the school system's right to suspend students for misconduct was capable of repetition yet evading review because a suspension could never be longer than the balance of the school year.) *Cf. Womack Newspapers, Inc. v. Town of Kitty Hawk*, 181 N.C. App. 1, 9, 639 S.E.2d 96, 102 (2007) (recognizing that the "capable of repetition yet evading review" mootness exception was not applicable where the governmental entity attempting to withhold the documents was the appealing party, and in the future, that entity could simply withhold the disputed documents and avoid mootness).

Thus, although the controversy is not moot, we are, alternatively, justified in exercising our discretion to consider the question because the issue is capable of repetition yet evading review. Accordingly, we turn to the merits of Gray Media's request for declaratory judgment.

**B. The Requested Documents Are Public Records and the City Had an Obligation to Produce the Documents Promptly.**

At the center of this dispute is whether the requested documents are, in fact, public records subject to public disclosure when they were solely held by a third party. Put another way, can a government agency place public records solely in the

possession of a third party or otherwise ensure that only the third party has immediate access to what would undoubtedly be public records if in the possession of the government agency and then assert that the documents are not subject to disclosure under the Public Records Act? We hold that it cannot.

We first consider the plain language of the statute and statutory exceptions to ascertain whether the requested records are public records under the statute. Second, we consider the City's argument regarding whether physical possession is a statutory requirement of the Public Records Act. Finally, we evaluate whether the test established in *Womack* for documents held by a third party is applicable to the facts of this case. Ultimately, we hold that under the plain language of the statute, the requested documents are public records not subject to any exception. The Public Records Act does not require actual possession as a requirement for disclosure. Finally, the test used in *Womack* is not applicable because the documents at issue in this case were created by public officials.

### 1. *The Documents Are Public Records Under the Plain Language of the Statute*

The principles governing statutory construction are well established: when the language of a statute is clear and unambiguous, there is no room for judicial construction, and courts must give the statute its plain meaning. *News and Observer v. State*, 312 N.C. 276, 282, 322 S.E.2d 133, 137 (1984). In the construction of any statute, "words must be given their common and ordinary meaning, nothing else

appearing." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202-03 (1974). The goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. *DTH Media Corp.*, 374 N.C. at 299, 841 S.E.2d at 257.

Here, the General Assembly specifically defined a public record as a document, regardless of physical form, made or received by a public official:

> all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, *regardless of physical form or characteristics, made or received* pursuant to law or ordinance in connection with the transaction of public business *by* any agency of North Carolina government or its subdivisions. Agency of North Carolina government or its subdivisions shall mean and include every public office, *public officer or official* (State or local, *elected or appointed*), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government.

N.C. Gen. Stat. § 132-1(a) (emphasis added).

The parties agree that the survey and survey responses are not physical documents; rather, they are electronic records created through the City Council member's use of a hyperlink to create a record on EY's servers. The City contends that it is of legal significance that Council members were never emailed these surveys as, for example, an attachment to an email. Rather, because they were sent hyperlinks to EY webspace, we should not view the responses, developed by Council

members in their governmental capacity, on taxpayer-funded time, as public records. At oral argument, the City conceded that if the issue was an email stored on a third-party server, the record would be a public record.

To accept the argument that a hyperlinked survey instead of an attached survey removes the document from the universe of public records requires us to read the statutory language much too narrowly. Such a reading would defeat the purpose of the statute, creating a clear path to hide huge swaths of governmental work from public scrutiny. Instead, we note that the statute includes broad language including "all documents . . . electronic data-processing records . . . *regardless of physical form or characteristics.*" N.C. Gen. Stat. § 132-1(a) (emphasis added). Further, the Public Records Act has been repeatedly interpreted to provide liberal access to public records. *Virmani*, 350 N.C. at 462, 515 S.E.2d at 685. *See also News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992) (recognizing that "[b]y enacting the Public Records Act, the legislature intended to provide that, as a general rule, the public would have liberal access to public records." (internal quotation marks omitted)). Therefore, we decline to adopt the City's narrow interpretation that a hyperlink to EY webspace does not constitute a "document or electronic data processing record."

Having determined that the survey responses are public records under the Public Records Act, we turn to the City's arguments that the requested documents fall under an exception to disclosure because a portion of the information may be the

propriety information of EY. In the Public Records Act, the General Assembly identified specific exceptions to general access for inspection or disclosure. N.C. Gen. Stat. § 132-1.1–1.14. However, those exceptions and exemptions to the Public Records Act must be construed narrowly. *See News and Observer Publishing Co.*, 330 N.C. at 486, 412 S.E.2d at 19 (holding that in the absence of clear statutory exemption or exception, documents falling within the definition of "public records" in the Public Records Act must be made available for public inspection).

Here, the City does not cite any specific statutory exception and only asserts that third-party EY may consider the records to be EY's Pre-existing IP, which, under the contract terms, EY owns. However, EY disclosed both the survey and the survey responses to the City without making a claim that any of the requested survey questions or responses contained Pre-existing IP. EY did mark the documents disclosed under the subpoena as "Confidential," however, the Contract mandates that EY treat all contract data as confidential.

Even assuming *arguendo* that some information was confidential as defined in N.C. Gen. Stat. § 132-1.2(1), which the City does not argue, the Public Records Act specifically addresses the issue of confidential information comingled with nonconfidential information and prohibits the denial of a request to inspect, examine, or obtain public records on the ground that confidential information is commingled with the non-confidential information. N.C. Gen. Stat. § 132-6(c). If it is necessary to separate confidential information from nonconfidential information, the burden is

upon the public agency to arrange such separation and to assume the cost of separation. *Id.* *See Ochsner v. N.C. Dep't of Revenue*, 268 N.C. App. 391, 400, 835 S.E.2d 491, 498 (2019) (recognizing that denial of access to public records is improper on the basis that the public record contains nonpublic information).

Therefore, we hold that the documents created using the hyperlinked survey and solely held by a third party are public records subject to disclosure and that, on the facts here, no confidentiality arguments prevent disclosure.

### 2. *Actual Possession Is Not a Requirement of the Public Records Act*

On appeal, the City argues that it did not have actual possession of the records or "substantial control" over EY to demand the records. The City also argues that it does not have an obligation to retrieve records from its contractors or consultants to comply with the Public Records Act. Finally, the City argues that this Court's holding in *State Employee Ass'n of N.C., Inc. v. N.C. Dep't of State Treasurer* creates a possession requirement for documents to be considered public records. 364 N.C. 205, 214, 695 S.E.2d 91, 97 (2010). Therefore, the City argues, it did not have an obligation to disclose the records. We disagree.

The Public Records Act provides a procedure to inspect, review or copy documents in the custodian's *custody* by requesting access from the custodian of the public records. N.C. Gen. Stat. § 132-6 (emphasis added). Custody is defined as "care and control of a thing or person for inspection, preservation, or security." *Custody*, *Black Law Dictionary* (11th ed. 2019). Because custody encompasses control of a

thing, actual or constructive possession is sufficient to meet the requirement for custody. *See Fordham v. Eason*, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999) ("Constructive possession is a legal fiction existing when there is no actual possession, but there is title granting an immediate right to actual possession.")[2]

Notably, the phrase "actual possession" does not appear in the section. Adding the words "actual possession" into the statute would add new substantive language that meaningfully alters the statute's scope, and we may not "insert words not used in the relevant statutory language during the statutory construction process." *Midrex Techs., Inc. v. N.C. Dep't. of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (citations and quotation marks omitted).

When the issue of whether the custodian has custody of a record is disputed, it is the role of the court to ensure that public records are properly shared with the public—it is not the role of the state agencies to self-regulate compliance with the Public Records Act. In *State Employees Ass'n of N.C.,* the North Carolina Supreme Court said:

---

[2] We find it informative that other states with similar public records acts have held that the public's right to access public records should not depend on where the records are physically located at the time of the request. *See Evertson v. City of Kimball*, 767 N.W.2d 751, 759 (Neb. 2009) ("The public's right of access should not depend on where the requested records are physically located."); *Tribune Review v. Westmoreland Hous. Auth.*, 833 A.2d 112, 118 (Pa. 2003) (recognizing that the lack of possession of existing writing by the public entity at the time of the request is not, by itself, determinative of the question of whether the writing is a public record subject to disclosure); *NCAA v. Associated Press*, 18 So.3d 1201, 1207 (Fla. App. 1 Dist. 2009) (explaining that the term "received" in the Florida Public Records Act refers not only to a situation "in which a public agent takes physical delivery of a document but also to one in which a public agent uses documents residing on a remote computer" for public business).

> The final determination of *possession or custody* of the public records requested is not properly conducted by the state agency itself. The approach that the state agency has the burden of compliance, subject to judicial oversight, is entirely consistent with the policy rationale underpinning the Public Records Act, which strongly favors the release of public records to increase transparency in government. Judicial review of a state agency's compliance with a request, prior to the categorical dismissal of this type of complaint, is critical to ensuring that, as noted above, public records and information remain the property of the people of North Carolina. Otherwise, the state agency would be permitted to police its own compliance with the Public Records Act, a practice not likely to promote these important policy goals.

364 N.C. 205, 214, 695 S.E.2d 91, 97 (2010) (emphasis added). Therefore, any dispute regarding whether the City was properly in *possession or custody* of the documents is one that only our courts can resolve.

In this case, the Contract is unequivocal that the surveys and responses—*i.e.*, Contract data as defined in the Contract—are exclusively owned by the City. The contractual language plainly indicates that EY must "promptly provide the Contract data to the City in machine-readable format upon the City's request at any time while the contract is in effect or within three years from when the contract terminates." Therefore, the City maintained custody through constructive possession of the records and was required under the Public Records Act to have exercised its right to demand the records from EY when Gray Media made the public records request.

Accordingly, we hold that the City had custody of the records by virtue of its constructive possession of the records and that physical, actual custody is not a

requirement of the statute. The City was obligated to request the document from EY to comply with the public records request made by Gray Media.[3]

### 3. *Womack Is Not Applicable*

The City argues that the two-part analysis that this Court used in *Womack,* 181 N.C. App. at 12, 639 S.E.2d at 104, should be applied in this case to support the City's argument that it has no obligation to retrieve documents from contractors or consultants to comply with the Public Records Act. [4] However, a careful reading of the case that established the two-part analysis, *Durham Herald Co., Inc.,* clarifies that this analysis applies to "records *made by contractors* and subcontractors (contractors) of the Authority, *kept by the contractors* and *not actually received* by the Authority." *Durham Herald Co. v. Low-Level Radioactive Waste Mgmt. Auth.*, 110 N.C. App. 607, 610–11, 430 S.E.2d 441, 444 (1993) (emphasis added). This *Womack* analysis is not applicable here because the requested records were not made by contractors.

The surveys were received by the City Council members on 11 December 2020

---

[3] The City's argument that Gray Media was required to request the documents directly from EY is in painful tension with the terms of the Contract. The Contract specifically requires that EY "will not reproduce, copy, duplicate, disclose, or use the Contract Data in any manner *except as authorized by the City in writing or expressly permitted by the Contract*." (Emphasis added). The City may not pass off the burden of complying with the Public Records Act to a third party, and it cannot credibly advance an argument that a requesting party should go to a third party when it knows that the third party would be contractually prevented from replying to such a request.

[4] The two-part test requires, first, a determination of whether the contractor is an "'[a]gency of North Carolina government or its subdivisions'; then, if a contractor is found to be an agency, inquiring whether its records are 'public records' that were 'made or received pursuant to law or ordinance in connection with the transaction of public business . . . .'" *Womack Newspapers*, 181 N.C. App. at 12, 639 S.E.2d at 104.

when the email with the unique hyperlink to the survey was sent to the Council members' email accounts. The survey responses were created by the City Council members, who are public officials. As discussed *supra*, when the Council member received the email with the unique hyperlink, accessed the hyperlink, and began filling out the survey, the records were public records subject to disclosure under the Public Records Act. *News Reporter Co., Inc. v. Columbus Cty.*, 184 N.C. App. 512, 514, 646 S.E.2d 390, 392 (2007) (holding that a letter written by a county employee and received by the County Board in connection with its decision to hire a medical director was a public record).

Accordingly, we hold that the trial court erred in entering summary judgment for the City. Records created or received by a government entity, even when stored or held by a third party, are subject to disclosure under the Public Records Act and the government agency must exercise its right to possession of the records to allow the requestor to inspect or examine the records. We reverse the order of the trial court and remand for entry of summary judgment in favor of Gray Media.

## C. Plaintiff Is Entitled to Attorneys' Fees for Compelling Production.

Finally, Gray Media argues it substantially prevailed in compelling the production of the records and, therefore, is entitled to attorneys' fees pursuant to N.C. Gen. Stat. § 132-9. The City argues that Gray Media should not be awarded attorneys' fees for two reasons: (1) Gray Media did not *substantially prevail* in compelling the disclosure of public records, and (2) the City acted in reasonable

reliance on opinions from this Court including *Womack* and *Durham Herald*. We hold that Gray Media did substantially prevail in compelling disclosure and the City did not act in reasonable reliance on *Womack* and *Durham Herald*.

North Carolina General Statute § 132-9 requires the award of attorneys' fees to a party whose litigation efforts substantially compel the disclosure of public records. The statute, however, directs a denial of a fee award if the losing party relied on established precedent, specifically:

> The court may not assess attorneys' fees against the governmental body or governmental unit if the court finds that the governmental body or governmental unit acted in reasonable reliance on any of the following:
> (1) A judgment or an order of a court applicable to the governmental unit or governmental body.
> (2) The published opinion of an appellate court, an order of the North Carolina Business Court, or a final order of the Trial Division of the General Court of Justice.
> (3) A written opinion, decision, or letter of the Attorney General.

N.C. Gen. Stat. § 132-9.

The General Assembly modified the Public Records Act in 2010 to award attorneys' fees to the party that "substantially prevails" rather than simply the prevailing party. 2010 N.C. Sess. Laws 638, 660 ch. 169, sec. 132-9. The parties do not provide caselaw and we have not found North Carolina caselaw interpreting what "substantially prevails" means under this statute. "Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C.*

*Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009). "[I]n effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words[.]" *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014). Thus, we understand that by adding the word substantially to the language of the statute, the Legislature expanded the class of parties entitled to attorneys' fees under the Public Records Act. This expansion includes entitling to attorneys' fees parties that may not receive all requested relief but do obtain relief, such as that resulting from the change in position of the opposing party during the litigation.

Here, Gray Media pursued production of the requested document under the Public Records Act and, when that was not successful, through statutorily-authorized litigation. Gray Media and the City exchanged correspondence on this public records request for three months between March and May of 2021. After almost four months of negotiation after the initial records request, Gray Media filed the complaint under the Public Records Act. Even after the complaint was filed, the City did not request the documents from EY until after Gray Media filed for summary judgment on 19 April 2022. Because the City only moved to obtain the documents, which it contractually owned, sixteen months after the original request, after litigation was commenced, and, indeed, after Gray Media sought summary judgment in its favor, this sequence of events compels a conclusion that Gray Media's actions substantially precipitated the ultimate disclosure of the records.

Additionally, this result finds support in the statutory definition of "substantially prevails" in the Federal Freedom of Information Act ("FOIA"), which uses similar language to determine when an award of attorneys' fee is appropriate. 5 U.S.C. § 552 (a)(4)(E)(ii) (2018). Under FOIA, "substantially prevails" is defined by statute as obtaining relief through either a judicial order, an enforceable written agreement, a consent decree, or a voluntary or unilateral change in position by the agency if the complainant's claim is not insubstantial. *Id.* Federal courts have held that an important factor in determining whether a plaintiff has substantially prevailed is whether litigation was reasonably necessary to induce the agency to release the information. *See, e.g., Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011) (recognizing that the OPEN Government Act of 2007 redefined "substantially prevailing" to include obtaining relief through a voluntary or unilateral change in position by the agency if the complaint's claim was not insubstantial; substantially prevailing does not require winning court-ordered relief on the merits of the FOIA claim); *Batton v. I.R.S.*, 718 F.3d 522, 526 (5th Cir. 2013) (holding appellant "substantially prevailed" when the IRS only began producing documents one year after the initial request and after the appellant filed a lawsuit); *Cf. Weishaupt-Smith v. Town of Banner Elk*, 264 N.C. App. 618, 623, 826 S.E.2d 734, 738 (2019) (recognizing that although this Court is not bound by federal caselaw, we may find its analysis and holdings persuasive in interpreting analogous federal rules).

Finding that Gray Media successfully compelled the disclosure of the records, we turn our attention to whether the City reasonably relied upon *Womack* or *Durham Herald* in its denial of the Public Records Request. Section 132-9 of the Public Records Acts provides the trial court "may not assess attorneys' fees against the governmental body or governmental unit if the court finds that the governmental body or governmental unit acted in reasonable reliance on . . . [a] "published opinion of an appellate court . . . ." N.C. Gen. Stat. § 132-9. In the hearing for summary judgment, the City claimed that it relied upon the two-part test in *Womack,* arguing that because EY was not a government agency, the City was not obligated to produce documents.

Because neither *Durham Herald* nor *Womack* stand for the City's proposition that documents created by City Council members but held by third parties are not subject to the Public Records Act, the City could not have reasonably relied on either *Durham Herald* or *Womack* for the purposes of avoiding attorneys' fees. As discussed *supra,* the two-prong test used in *Womack* came from *Durham Herald* and specifically applied to documents created by a third party that have not been received by the government agency. *Durham Herald*, 110 N.C. App. at 610–11, 430 S.E.2d at 444 ("This case presents a question of first impression here—whether records *made by contractors and subcontractors* (contractors) of the Authority, *kept by* the contractors and *not actually received* by the Authority are public records, as defined under [N.C. Gen. Stat.] § 132–1, requiring disclosure under North Carolina's public records law."

(emphasis added)). *Womack* held that because the result in *Durham Herald* that the requested documents were not public records turned on the specificity of the North Carolina Low-Level Radioactive Waste Act, its logic was unpersuasive in that later case. *Womack*, 181 N.C. App. at 12, 639 S.E.2d at 103.

Here, it is undisputed that the email with the hyperlink was received by the City Council members and the City Council members created the survey responses in the course of City business. While the City needed to request the survey responses from EY, the City was obliged to do so under the plain language of the statute and was not excused from that obligation by any decision from our appellate courts. We do not suggest that the City acted in bad faith by arguing that *Womack* and *Durham Herald* supports their position, but an erroneous legal interpretation of those cases cannot excuse a governmental entity from its financial obligations to parties authorized to claim attorneys' fees by statute. Significantly, in *Womack*, this Court signaled that it would reject the precise argument offered by the City here, noting that "permitting [a public agency] to place documents such as these in the hands of a so-called independent contractor in order to escape the public records requirements[]" would allow government agencies to skirt the public records disclosure requirement and shield records from public scrutiny. *Womack*, 181 N.C. App. at 14, 639 S.E.2d at 105. That same admonition applies equally here—public records are *"the property of the people."* N.C. Gen. Stat. § 132-1(b).

Therefore, we hold that attorneys' fees are warranted and remand for an award

of attorneys' fees with the amount to be determined by the trial court.

## III.    CONCLUSION

We hold that the question of whether the records held solely by EY as part of the contract between the City and EY are subject to the Public Record Act is not moot. Accordingly, we reverse the order of summary judgment in favor of the City. We remand for entry of an order granting summary judgment in favor of Gray Media declaring the documents created by City Council members and stored on EY servers to be public records subject to disclosure under the Public Records Act. We further remand for entry of an award of attorneys' fees to Gray Media, with the amount to be determined by the trial court after further hearing.

REVERSED AND REMANDED.

Judges ZACHARY and COLLINS concur.